UNIVERSITY NATIONAL
BANK, Appellant,

v.

ERNST & WHINNEY, Appellee.

No. 04–88–00090–CV.

Court of Appeals of Texas,
San Antonio.

June 14, 1989.

Rehearing Denied July 25, 1989.

Bruce Robertson, Jr., San Antonio, for appellant.

Seagal V. Wheatley, Robert Michael Duffey, Oppenheimer, Rosenberg, Kelleher, et al., San Antonio, for appellee.

Before CADENA, C.J., and BIERY and CARR, JJ.

## OPINION

BIERY, Justice.

Appellant, University National Bank ("Bank"), sued Ernst & Whinney ("E & W") to recover damages sustained by Bank as a result of E & W's alleged breach of express or implied contract and negligence in performing professional accounting services for Bank in 1983 and 1984. In its answer, E & W denied Bank's allegations and alleged that Bank negligently caused its own damages by entering into management of and supervision of certain loans. The trial court granted E & W's motion for instructed verdict on Bank's breach of contract claims and submitted the case to the jury solely on negligence issues. The jury found that both parties were negligent, Bank's damages were $404,006.00 and Bank's negligence and proximate causation were 59%, with the remaining 41% assigned to E & W under a comparative negligence submission.

Based on the jury's verdict, the trial court rendered judgment denying any relief to Bank. Bank appeals bringing forward three points of error: that the trial court erred in instructing a verdict on Bank's breach of contract claims; that the trial court erred in refusing to allow Bank to present evidence of the total amount of money lost, including that portion of the loans in which other lending institutions participated without recourse to Bank; and that the trial court erred in refusing to disregard the jury's finding of Bank's negligence and to render judgment for Bank. We affirm the judgment of the trial court.

For a full understanding of the factual background, we will review the relationships among the parties and certain nonparties. E & W had been the Bank's independent auditor and accountant before Bank's charter was obtained in the late 1970's. It was Bank's only accountant. Among other things, E & W performed the annual audit of the Bank. This suit deals with E & W's audit of the Bank for the year ending December 31, 1983. In prior years, E & W had issued an engagement letter prior to beginning its annual audit; however, after having established its relationship with Bank, E & W did not issue such an engagement letter for the 1983 audit.

Bank began its corporate life as a relatively small institution making traditional loans to its customers. Its officers included a number of former federal and state bank examiners. Its board of directors consisted of persons with legal, real estate, business and oil and gas experience.

The early 1980's saw the dawn of the halcyon days of bank deregulation, high priced oil and euphoric real estate values, the precursors of the current financial in-

dustry predicament. In this environment, Bank entered into a business plan to grow into a five or six bank holding company. One of its methods to achieve this goal was through large real estate development loans, a type of lending with which Bank had little experience. Bank viewed these loans as very profitable and with little risk because approximately 90% of the loans would be "participated out" to other financial institutions without recourse to Bank.

In order to implement this business plan, Bank secured the services of a "loan broker," who facilitated the acquisition of participants. The loan broker was John Lapaglia, owner of a firm called Falcon Financial Corporation. Lapaglia was introduced to Bank in February 1982 by the son of one of Bank's directors.

With the assistance of 20–20 hindsight, it became clear that the motives of Lapaglia and his associates were not pure. To the contrary, Lapaglia was able to market himself to Bank in such a way which enabled Lapaglia, through inflated real estate appraisals, to obtain millions of dollars in loans from Bank which were not repaid. Lapaglia and his entities were not made parties to this litigation.

In the summer of 1983, Bank was informed by the federal government that the frequency of bank examinations would be reduced. As a result of this information, Bank, in a meeting with E & W's employees, expressed its desire for E & W to be of additional assistance to Bank in examining the loan portfolios as a bank examiner would do and to advise the Board of any irregularities. Bank alleged and submitted evidence that E & W, through its employees, indicated that it would do so.

In late February 1984, one of E & W's employees, as a part of the 1983 audit, drafted an internal memorandum which raised serious concerns about the appraisals for certain Lapaglia loans. This information was not conveyed by E & W to Bank. At about the same time, federal bank examiners were on the Bank's premises conducting an inquiry, and the examiners raised similar concerns with Bank's officers and directors about the Lapaglia

loans and appraisals. Bank did not heed the federal official's warnings and continued to do business with Lapaglia.

■ We will address the Bank's points of error in trial sequence. Even though Bank, without recourse, participated out approximately 90% of the loans in question, Bank contends that the trial court erred in refusing to allow evidence of the losses of the participating financial institutions. E & W's objection that such evidence was irrelevant was sustained.

Evidence is relevant only if it tends to establish the truth of a proposition material to the issue. *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210, 216 (1958); *Trailways Bus Sys., Inc. v. Hamauei*, 660 S.W.2d 607, 610 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). There was no allegation that the participating entities relied on E & W's expertise or that Bank was authorized to sue E & W on their behalf. Evidence of losses allegedly suffered by financial institutions which did not sue E & W would not be material to any alleged breach of duty by E & W in its relationship with Bank. The point of error concerning damage evidence is overruled.

When Bank rested its case, the trial court granted E & W's motion for instructed verdict on Bank's breach of express or implied contract claims. Bank contends this ruling was erroneous.

■ In reviewing an instructed verdict, we must consider all of the evidence in the light most favorable to Bank, disregarding all contrary evidence and inferences. *Vance v. My Apartment Steak House*, 677 S.W.2d 480, 483 (Tex.1984). We must also indulge Bank with every reasonable inference that may properly be drawn from the evidence. *Ortiz v. Santa Rosa Medical Center*, 702 S.W.2d 701, 703 (Tex.App.— San Antonio 1985, writ ref'd n.r.e.).

■ It is error for the trial court to grant an instructed verdict where there is evidence on each element of the cause of action. *Koenning v. Manco Corp.*, 521 S.W.2d 691, 699 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Where no evidence of probative force on an ultimate

fact element exists or where the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 770 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd).

The elements of a contract, express or implied, are identical. In the case of an express contract, the assent element is expressly stated. In an implied contract, the assent element must be inferred from the circumstances of the transaction. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.,* 480 S.W.2d 607, 609 (Tex.1972).

If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Weitzman v. Steinberg,* 638 S.W.2d 171, 175 (Tex.App.—Dallas 1982, no writ). A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered or the property to be transferred. *Terrell v. Nelson Puett Mortgage Co.,* 511 S.W.2d 366, 369 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.). There is no authority to ask a jury to supply an essential term in the contract which the parties were unable to complete by mutual agreement. *Weitzman,* 638 S.W.2d at 175.

In prior audit years, E & W had advised Bank of accounting matters in its management letters. Because of this prior history, Bank alleges that it had an implied contract with E & W to provide the loan supervision information which E & W withheld from Bank in its internal audit memorandum. While the withholding of this information may have been a breach of a tort duty, the trial court properly held that evidence of each and every element of an implied contract was not presented.

With reference to an express contract, the testimony of one of Bank's directors was that, because of fewer federal bank examinations, Bank wanted E & W to exercise functions that bank examiners had exercised in the past. Bank's proffered evidence was that E & W responded, "We will take care of you on that. We will look after you. We will report to you on whatever is necessary." However, nothing was specified about the parameters of the obligation, the time of its commencement, the duration, the frequency of E & W's purported inspection obligations or the consideration to be received by E & W.

Additionally, alleged breaches of duty by professionals to their clients are in the nature of tort claims as opposed to contract claims. *See Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988); *Black v. Wills,* 758 S.W.2d 809, 814 (Tex.App.—Dallas 1988, no writ); *Gabel v. Sandoval,* 648 S.W.2d 398, 399 (Tex.App.—San Antonio 1983, writ dism'd); *Citizens State Bank v. Shapiro,* 575 S.W.2d 375, 386 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Ordinarily the standard of care applicable to the conduct of auditors or public accountants is the same as that applied to lawyers, doctors and other professionals engaged in furnishing skilled services for compensation. *Greenstein, Logan & Co. v. Burgess Mktg., Inc.,* 744 S.W.2d 170, 185 (Tex.App.—Waco 1987, writ denied); *Atkins v. Crosland,* 406 S.W.2d 263, 264 (Tex.Civ.App.—Fort Worth 1966), *rev'd on other grounds,* 417 S.W.2d 150 (1967). The point of error concerning the instructed verdict is overruled.

In its final point of error, Bank contends that the trial court should have disregarded the jury's findings that Bank was more negligent than E & W and cites *Greenstein* in support of its position. Bank does not challenge the sufficiency of the evidence to support the jury's answer.

At the issue submission stage of the trial, Bank did not object to the submission of issues concerning Bank's negligence. Objections to the charge of the court not presented shall be considered waived. TEX.R.CIV.P. 272. The final point of error is overruled.

The judgment of the trial court is affirmed.