Lawrence W. SHIPLEY III, Appellant

v.

Andrea VASQUEZ, Appellee

No. 04-16-00295-CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: May 31, 2017

APPELLANT ATTORNEY: Mark A. Giltner, Shelton & Valadez, P.C.; The Vogue Building, Suite 500, 600 Navarro Street, San Antonio, TX 78205, John Larios, Shelton & Valadez, P.C., The Vogue Building, San Antonio, TX 78205, Scott Masur McElhaney, Jackson Walker LLP, 2323 Ross Ave Ste 600, Dallas, TX 75201, David Schlottman, Jackson Walker LLP, 2323 Ross Ave Ste 600, Dallas, TX 75201.

APPELLEE ATTORNEY: Randall A. Pulman, Pulman, Cappuccio, Pullen, Benson & Jones, LLP, 2161 N.W. Military Highway, Suite 400, San Antonio, TX 78213, Ryan Christopher Reed, Pulman Cappuccio Pullen Benson & Jones, LLP, 2161 NW Military Hwy., Suite 400, San Antonio, TX 78213, Leslie Sara Hyman, Pulman, Cappuccio, Pullen, Benson & Jones, LLP, 2161 NW Military Hwy Ste 400, San Antonio, TX 78213-1844, James Edwin Willingham Jr., Law offices of Jim Willingham PC, 2161 NW Military Hwy Ste 103, San Antonio, TX 78213-1844.

Sitting: Karen Angelini, Justice, Marialyn Barnard, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Patricia O. Alvarez, Justice

On February 26, 2016, a Bexar County jury found that Appellant Lawrence W. Shipley III and Appellee Andrea Vasquez entered into an oral agreement and Shipley subsequently breached that agreement. The jury awarded Vasquez $216,000.00 in damages against Shipley. The trial court denied Shipley's motion for judgment notwithstanding the verdict (JNOV) and it signed the final judgment on April 18, 2016. Shipley appeals the denial of his motion for JNOV.[1]

Because we conclude the terms "take care of" and "like a Shipley" in the parties' oral agreement are indefinite as a matter of law, and there is no evidence that makes the terms reasonably definite and certain, we reverse the trial court's judgment pertaining to Vasquez's breach of contract claim and render judgment that Vasquez take nothing from Shipley on her breach of contract claim. We affirm the portion of the judgment that orders Vasquez to take nothing on her claims against Shipley Do-Nut.

### FACTUAL AND PROCEDURAL HISTORY

The case stems from the on-again, off-again relationship between Andrea Vasquez and Lawrence W. Shipley III, the president of Shipley Do-Nut Flour & Supply, Co., Inc.

**A. 1996 to 1999: Relationship before Birth of L.N.S.**

Shipley and Vasquez's relationship began in 1996. Vasquez, at that time, was a

1. Although Shipley Do-Nut Flour & Supply Co., Inc. was a party to the suit before the trial court, only Lawrence W. Shipley III, individually, raised an issue on appeal.

single mother working as a substitute teacher in the Harlandale Independent School District. The two began dating after Vasquez requested Shipley Do-Nut participate in a school fundraiser. After several months, Vasquez began working for Shipley as marketing director for Shipley Do-Nut's San Antonio operations. Vasquez contends that, based on Shipley's encouragement, she allowed her young son to live primarily with his father so that she could move to Houston to live with Shipley.

In 1999, Vasquez and Shipley were living together in Houston. Vasquez was working in the marketing department for Shipley Do-Nut when she became pregnant. The relationship was rocky; following a fight, Shipley fired Vasquez. Vasquez left Houston and moved back to San Antonio. Vasquez, however, continued to talk with Shipley and traveled several times to Houston. Vasquez alleges that during one of these trips to Houston, at Shipley's insistence, she reluctantly agreed to terminate the pregnancy. However, after Shipley and Vasquez arrived at the hospital, when Vasquez was alone with the doctor, Vasquez changed her mind. She talked with a social worker for a little while, and then the hospital gave her a sedative so she could relax and go to sleep. When she woke, she was in her hospital room alone, and Shipley had placed her four pieces of luggage in her room. Shipley was gone. Vasquez called her parents in San Antonio to pick her up and take her back to San Antonio.

Five months into her pregnancy, Vasquez suffered a miscarriage. By all accounts, Vasquez was devastated. Over the next couple of months, Vasquez and Shipley attempted to reconcile. Vasquez again flew to Houston to live with Shipley. On August 28, 1999, following another fight, Shipley left Vasquez at the airport and bought her a ticket back to San Antonio. When Vasquez arrived in San Antonio, instead of calling her parents, she rented a car. By her own account, Vasquez left the airport and stopped at the pharmacy to refill her anti-anxiety medication. Vasquez does not remember anything beyond driving on Highway 281 before she "blacked out." Vasquez was involved in a car wreck in which a person was killed. After several days in the hospital, Vasquez was released. Shortly thereafter, Shipley called Vasquez to see if she was okay. Vasquez and Shipley began dating again and Vasquez moved back to Houston.

## B. Birth of L.N.S.

In November of 1999, Vasquez became pregnant again. Vasquez moved back to San Antonio to live with her parents, and she and Shipley continued to maintain a long-distance relationship.

In June of 2000, during the seventh month of her pregnancy, Vasquez was charged with intoxication manslaughter for the August 1999 accident. Approximately one month later, Vasquez gave birth, prematurely, to her daughter L.N.S. Beyond requiring a little extra time at the hospital, L.N.S. and Vasquez returned to live with Vasquez's parents. Six weeks later, Vasquez and L.N.S. moved to Galveston so that they could be closer to Shipley. In Galveston, Vasquez and L.N.S. regularly saw Shipley. In March of 2001, Vasquez ended the relationship when she learned Shipley was involved in another relationship.

In May of 2001, Vasquez entered a plea of no contest on the intoxication manslaughter charge and was sentenced to ten-years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

In June of 2001, Shipley filed suit in Bexar County to establish parentage. Vas-

quez and Shipley agreed Shipley would pay child support of $600.00 per month. During her incarceration, Vasquez's parents raised L.N.S. All parties agree that Shipley paid the $600.00 per month to Vasquez's parents throughout Vasquez's incarceration. Shipley did not attempt to see L.N.S. at any point during this time period. Vasquez testified her parents struggled to support L.N.S. during this time.

## C. Events between November 2008 and June 2012

Following Vasquez's release from prison in November of 2008, Vasquez and Shipley again began talking. By this point, Shipley was married and the father of two boys. The record substantiates that Shipley voluntarily increased the monthly child support payments for L.N.S. to $750.00 per month and then to $1,500.00 per month. Shipley also agreed to pay for L.N.S.'s private school tuition. Vasquez contends Shipley repeatedly rejected any meeting with L.N.S.

During the summer of 2011, Shipley agreed that Vasquez and L.N.S. should move out of her parents' house. Vasquez testified that Shipley told her to look for

> the perfect home—I remember him telling me do this and it is what [L.N.S.] needs, it is what [L.N.S.] deserves, to make sure that she is taken care of like a Shipley would be taken care of. And I asked him again to make sure and he said that he was going to take care of me as long as [L.N.S.] was a child and living under my roof.

When Vasquez found a home to lease, it was more than she could afford. Shipley told her to "go ahead and do it." Vasquez and L.N.S. moved into the new home in December of 2011, shortly after receiving a check from Shipley for $6,500.00 in late November. The check was to be applied to the first month's rent. Vasquez contends that she wrote Shipley and reiterated that she could not afford the house without his help. Shipley agreed to help and even sent a rental truck with furniture and household items for the residence.

About this time, during the latter part of 2011, Vasquez and Shipley agreed Vasquez would scout locations for Shipley Do-Nut in the San Antonio area. She worked in that capacity in 2011 and 2012. During this time, Shipley continued to send money for household expenses, medical bills, and even to help pay for the funeral of one of Vasquez's relatives. Vasquez acknowledged the additional monies sent before November 2011 were a gift for Vasquez and L.N.S. and were not "to fulfill a legal obligation."

In March of 2012, Shipley and L.N.S. began communicating directly with each other. Vasquez and Shipley continued to communicate and on May 4, 2012, Shipley sent Vasquez a $36,000.00 check to purchase a used Lexus SUV. Pursuant to Shipley's instructions, John Mayes, one of Shipley's employees, was listed on the vehicle's title as first lienholder.

Between January 2011 and August 2012, Shipley sent Vasquez a total of $146,839.00 to cover her and L.N.S.'s expenses. Vasquez testified that she was very appreciative and happy that L.N.S. was finally being brought up "like a Shipley." During this time, Vasquez continued to work for Shipley Do-Nut scouting locations for future stores. On at least one occasion, Vasquez represented herself, and signed a marketing contract, as Andrea Vasquez-Shipley.

In mid-2012, Vasquez and Shipley began to make plans for Shipley to meet L.N.S., now twelve years old. According to Vasquez, L.N.S. was excited to meet Shipley. On June 22, 2012, Vasquez and L.N.S.

traveled to Houston and L.N.S. was introduced to Shipley. The meeting did not go well and ended with L.N.S. running off from lunch and crying in the bathroom. Vasquez and Shipley's relationship deteriorated quickly at that point and lawyers were soon involved.

### D. Events following June 2012 Meeting

On July 19, 2012, Shipley's counsel sent Vasquez correspondence demanding that any further communications with Shipley be directed through L.N.S. or her doctor. Shipley also ceased any payments above the agreed $1,500.00 per month for child support.

Approximately one month later, on August 10, 2012, Shipley Do-Nut filed suit seeking injunctive and trademark relief against Vasquez for unauthorized use of the Shipley name. Vasquez timely filed an answer, initial discovery requests, and a counterclaim. Over three years later, on September 16, 2015, Vasquez filed her first amended counterclaim and third-party petition alleging Shipley individually breached their November 2011 agreement and that Shipley breached his fiduciary duty owed to Vasquez; Vasquez also asserted that Shipley Do-Nut was a participant in Shipley's breach of fiduciary duty.

In November 2015, two months after Vasquez filed her third-party petition against Shipley, Vasquez and Shipley executed a mediated settlement agreement increasing Shipley's child support payments to $2,750.00 per month and adding additional obligations, including medical expenses and private high school tuition. The parties entered the mediated settlement agreement as part of the Bexar County Suit Affecting Parent-Child Relationship. The following month, Vasquez and L.N.S. moved back into Vasquez's parents' home.

The matter was called for jury trial on February 19, 2016; on February 26, 2016, the jury answered "yes" to the following question:

Did [Shipley] and [Vasquez] agree in November 2011 that [Shipley] would take care of [Vasquez] so long as their daughter was a child and living under [Vasquez's] roof and in exchange [Vasquez] would raise their daughter like a Shipley?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

To be enforceable, a contract must be reasonably definite and certain. Failure to agree on or include an essential term renders a contract unenforceable.

The jury found that Shipley breached the oral agreement and awarded Vasquez $216,000.00 in damages. The jury charge notes that the jury calculated $3000.00 per month for seventy-two months. The jury also found that Shipley breached the fiduciary duty he owed to Vasquez, but awarded no damages. Finally, the jury found that Shipley Do-Nut did not participate in Shipley's breach of fiduciary duty.

On April 18, 2016, the trial court denied Shipley's motion for JNOV and signed the final judgment. On appeal, Shipley asserts the trial court erred in denying his motion for JNOV. Specifically, Shipley contends as follows:

(1) the terms of any agreement entered between Shipley and Vasquez were not sufficiently certain to enable a court to understand the parties' obligations,

(2) the agreement could not be completed within one year and is there-

fore unenforceable under the statute of frauds,

(3) partial performance does not defeat the statute of frauds bar,

(4) the oral agreement is ineffective parol evidence to the parties' Mediated Settlement Agreement made part of the existing Suit Affecting Parent-Child Relationship, and

(5) the agreement is unenforceable on public policy grounds.

Because our determination that the terms of the oral agreement between Shipley and Vasquez were not reasonably definite and certain, and that determination is dispositive, our analysis is limited to this appellate issue.

### INDEFINITE TERMS CONTAINED
#### WITHIN THE AGREEMENT

Shipley does not present argument and authorities to challenge the jury's finding that in November 2011, he and Vasquez entered into an oral agreement in which he agreed to "take care of" Vasquez if she raised L.N.S. "like a Shipley." Instead, he contends the trial court erred in denying his motion for JNOV because the agreement's terms "take care of" and "like a Shipley" are indefinite and cannot be defined as a matter of law.

### A. Reasonably Definite and Certain Terms

An agreement "is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."); *Harris v. Balderas*, 27 S.W.3d 71, 77 (Tex. App.—San Antonio

2000, pet. denied) ("[T]he [contract's] terms must be expressed with sufficient certainty so that there will be no doubt as to what the parties intended."). Whether an agreement fails for indefiniteness is a question of law to be determined by the court. *Fiduciary Fin. Servs. of the Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied). "If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 33, cmt. a (1981)).

The terms of an oral contract may be proven by either circumstantial or direct evidence. *See Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App.—Eastland 2015, pet. denied) (citing *Harris*, 27 S.W.3d at 77). Evidence includes "the communications between the parties and the acts and circumstances that surround those communications." *Id.* (citing *Palestine Water Well Servs., Inc. v. Vance Sand & Rock, Inc.*, 188 S.W.3d 321, 325 (Tex. App.—Tyler 2006, no pet.)).

### B. Arguments of the Parties

Shipley contends the oral agreement is insufficiently certain to enable a court to understand the parties' obligations. At most, Vasquez proved that Shipley promised to "take care of" her and, that in exchange, she promised to raise their daughter "like a Shipley." Specifically, Shipley contends the agreement is indefinite regarding Vasquez's obligations, Shipley's obligations, and the period of time under which the parties were obligated to perform.

Vasquez counters that the jury found the existence of an oral agreement and the jury's definiteness finding is bolstered by the surrounding circumstances, which sup-

plied meaning and limits to the terms, and sufficiently informed the finding that Vasquez and Shipley each understood their obligations under the agreement.

## C. Standard of Review

[4, 5] A trial court should grant a motion for JNOV when a legal principle precludes recovery. *Iroh v. Igwe*, 461 S.W.3d 253, 261 (Tex. App.—Dallas, 2015, pet. denied); *see* TEX. R. CIV. P. 301. A trial court may disregard a jury's verdict and render JNOV if a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; *Bernstein v. Thomas*, 298 S.W.3d 817, 821 (Tex. App.—Dallas 2009, no pet.) (citing *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991)). For evidentiary questions, appellate courts review a JNOV under the no-evidence standard. *Bank of Am., N.A. v. Eisenhauer*, 474 S.W.3d 264, 265 (Tex. 2015) (per curiam).

No evidence exists when there is: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact.

*Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)).

Under a no evidence standard, we "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 807. The "[j]urors are the sole judges of the credibility of the witnesses and the weight to give their testimony." *Id.* at 819. And, as a reviewing court, we "must assume that jurors resolved all conflicts in accordance with [their] verdict." *Id.* at 820.

## D. Evidence Defining the Essential Terms

The jury found that, in November of 2011, Shipley and Vasquez agreed "that [Shipley] would take care of [Vasquez] so long as their daughter was a child and living under [Vasquez's] roof and in exchange [Vasquez] would raise their daughter like a Shipley." Although not all terms in a parties' agreement are essential, the terms "take care of" and "like a Shipley" in this agreement are "vitally important elements of their bargain." *See McCoy v. Alden Indust., Inc.*, 469 S.W.3d 716, 725 (Tex. App.—Fort Worth 2015, no pet.); *Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi 2013, no pet.).

This court's opinion in *University National Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ), is instructive. The evidence supported that Ernst & Whinney promised the bank that "We will take care of you on that. We will look after you. We will report to you on whatever is necessary." *Id.* This court held that the trial court correctly granted Ernst & Whinney's motion for instructed verdict on the breach of contract claim because neither the agreement nor any evidence adduced at trial contained any specifics regarding "the parameters of the obligation, the time of its commencement, the duration, the frequency of [Ernst & Whinney's] purported inspection obligations or the consideration to be received by [Ernst & Whinney]." *Id.* Compare *Garcia v. Dairy Queens of W. Tex., Inc.*, No. 07-97-0154-CV, 1998 WL 479755, at *3 (Tex. App.—Amarillo Aug. 17, 1998, no pet.) (concluding store manager's promise to "take care" of employees injured on the job, without any oral or

written communications evidencing the terms of the agreement, was indefinite because it did not specify the parameters of the obligation), *with Esquenazi v. Sardar*, No. 05-01-00475-CV, 2002 WL 519684, at *2–3 (Tex. App.—Dallas Apr. 8, 2002, no pet.) (holding promise "we can take care of that" was followed by promise to pay $80,000.00 annual salary and twenty-percent share of net profits and therefore not indefinite).

By themselves, the terms "take care of" and "like a Shipley" are indefinite as a matter of law. *See Univ. Nat'l Bank*, 773 S.W.2d at 710; *see also Garcia*, 1998 WL 479755, at *3. But we also consider "the communications between [Shipley and Vasquez] and ... the acts and circumstances that surround those communications." *See Harris*, 27 S.W.3d at 77; *accord Turner*, 485 S.W.3d at 521.

Viewing the evidence in the light most favorable to the verdict, *see City of Keller*, 168 S.W.3d at 822, we nevertheless conclude there is no evidence that makes the terms "take care of" or "like a Shipley" reasonably definite and certain. *Contra Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 831 (requiring contract terms to be "sufficiently definite to enable a court to understand the parties' obligations"); *T.O. Stanley Boot Co.*, 847 S.W.2d at 221 (requiring a contract to "be sufficiently definite in its terms so that a court can understand what the promisor undertook"); *Harris*, 27 S.W.3d at 77 ("[T]he [contract's] terms must be expressed with sufficient certainty so that there will be no doubt as to what the parties intended."). Because the essential terms are not reasonably definite and certain, the oral agreement is not enforceable. *See Fort Worth Indep. Sch. Dist.*, 22

S.W.3d at 846; *Goldman v. Olmstead*, 414 S.W.3d 346, 354–55 (Tex. App.—Dallas 2013, pet. denied); *Harris*, 27 S.W.3d at 77; *Univ. Nat'l Bank*, 773 S.W.2d at 710.

### CONCLUSION

Vasquez sued Shipley for breach of fiduciary duty and Shipley Do-Nut for participating in Shipley's breach of fiduciary duty. The jury found (1) Shipley breached his fiduciary duty to Vasquez, (2) Shipley Do-Nut did *not* participate in Shipley's breach of fiduciary duty, and (3) no damages. The trial court rendered judgment that Vasquez take nothing from Shipley Do-Nut, and Vasquez did not appeal the fiduciary duty findings. We affirm that portion of the judgment.

Vasquez also sued Shipley for breach of contract. The jury found (1) Shipley and Vasquez made an oral agreement, (2) Shipley breached it, and (3) $216,000.00 in damages. The trial court rendered judgment on the verdict and awarded Vasquez damages, certain costs of court, and post-judgment interest. Because the essential terms of Vasquez and Shipley's oral agreement were not reasonably definite and certain, Shipley was entitled to judgment notwithstanding the verdict. We reverse the portion of the judgment awarding Vasquez damages against Shipley for breach of contract, and we render judgment that Vasquez take nothing on her breach of contract claim.[2]

---

**2.** Because the oral agreement's terms question disposes of Vasquez's breach of contract claim, we need not address the other bases Shipley raised on appeal to reverse the breach of contract claim award. *See* TEX. R. APP. P. 47.1 (providing opinions need only address issues necessary to final disposition of the appeal).