**Reverse and Remand and Opinion June 27, 2018**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00759-CV

### PURA VIDA SPIRITS CO., LLC, Appellant
### V.
### TALENT TREE, LLC, Appellee

### On Appeal from the 193rd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-16-13924

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and Whitehill
Opinion by Justice Whitehill

Pure Vida Spirits Co., LLC and Talent Tree, LLC generally agreed that Talent would provide product demonstration services to promote Vida's new tequila product. But Vida refused to pay Talent's full invoice amounts, claiming that Talent poorly performed its services for Vida. Talent then sued to recover the unpaid balance based on breach of express contract, suit on sworn account, and quantum meruit theories.

Vida appeals the trial court's summary judgment for Talent. The key questions before us are whether (i) Talent conclusively established the essential terms of an express contract between the parties concerning the services at issue and (ii) Vida's summary judgment response raised fact issues regarding the reasonable value of the services that Talent provided. We conclude that the trial court erred by granting Talent's summary judgment motion because the parties' written agreement on which Talent bases its contract claim does not include at least one essential term and

there are genuine issues of material fact concerning Talent's other claims. Furthermore, because summary judgment was erroneously granted on Talent's recovery theories, there is no basis for awarding Talent's attorney's fees. We therefore reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Vida is a boutique crafter of fine tequila and spirits. Its business model relies on its ability to leverage in-store product demonstrations into sales. To this end, in 2015, Vida began a "Margarita Program" to showcase its tequilas and an orange liquor mixing product called "NARANJA" by mixing margaritas at product demonstrations in liquor stores. These promotions utilized an atypical preparation method by mixing with cocktail shakers to maximize attention and encourage sales.

Vida contacted Talent to discuss using its services for in-store promotions. The parties signed an agreement on March 6, 2015 (the "Agreement"). Talent maintains that the Agreement governed the parties' relationship throughout the relevant time period. Vida disagrees, claiming that the Agreement lacks essential terms concerning the promotional events at issue.

Talent performed promotional presentations for Vida from October through December, but Vida refused to pay the related invoices in full. Consequently, Talent sued Vida based on breach of contract, sworn account, and quantum meruit. Talent then moved for traditional and no-evidence summary judgment on its claims. Talent's live pleading and summary judgment motion staked its contract claim on the premise that the Agreement alone was the contract governing the parties' obligations.

In support of its summary judgment motion, Talent submitted the affidavit of Priscilla Hermes, its president, and an affidavit on attorney's fees. The Hermes affidavit included the Agreement and invoices to Vida totaling $73,032.66. The invoices relate to services Talent

–2–

provided in October, November, and December 2015. According to Hermes, $65,729.40 remained unpaid.

Vida responded to Talent's motion, and argued that the Agreement lacked essential terms concerning the services Talent was to provide during the period covered by Talent's invoices. Instead, Vida argued that those terms were the subject of an implied contract evidenced by a series of communications beginning in October 2015. In support of its response, Vida submitted the affidavit of its chairman, Stewart Skloss. According to Skloss, the Agreement was for a single event, and the parties began discussing a potential long-term contract the following October. His affidavit included several e-mails reflecting these discussions.

During those discussions, Skloss emphasized that a "minimum guarantee of each product" was essential. He also specified that the individuals performing the presentations should understand that they were making a "La Primera Cocktail" with ice and "creating an environment/buzz" by doing so and that they were to push sales during the demonstrations. The individuals Talent provided for the promotions were also supposed to know what the demonstration set up should look like and understand Vida's requirements concerning use of the shaker, as reflected in the video training Skloss provided for that purpose. Skloss also stressed that the product demonstrators should adhere to a certain dress code and should not use their cell phones while working.

On October 13, Talent sent Vida a "Proposal of Services," estimating 400 three-hour events to occur between October and December at a rate of $35 per hour plus bottle incentives. Unlike the Agreement, the proposal specifies the services Talent would provide and the specific requirements for and duties of the Talent representatives conducting demonstrations.

When Skloss received the proposal, he expressed concern regarding whether Talent could generate a minimum level of sales. Specifically, he emailed Talent that:

. . . Our all-in cost is $198.70 per tasting . . . We would need to sell an average of 20 bottles of tequila, 10 bottles of NARANJA, 5 bottles of bloody mary mix, and 5 bottles of Sangrita to cover the costs. If you guys can guarantee these numbers, sign us up for all the nationwide tastings you can book.

Given your average thus far, how best can we get to where we both need/want to be? We are open to all win/win suggestions.

The parties continued negotiations, but ultimately did not agree to a contract. Nonetheless, Talent performed demonstrations from October through December. Skloss visited some of the promotions and saw that Talent representatives were not dressed as they were supposed to be, did not engage with customers, did not use Vida's demonstration methods, and were constantly checking their cell phones. Vida complained that the representatives did not make margaritas in almost 50% of the promotions and did not sell a single bottle of tequila during any event. Despite these complaints, Talent billed Vida for the promotions.

Talent moved for traditional and no-evidence summary judgment on its breach of an express contract, sworn account, and quantum meruit claims. The trial court granted the summary judgment motion "on all of Plaintiff's claims and causes of action." The judgment awards Talent $65,729.40 in damages and $6,000 in attorney's fees.

Vida argues, and Talent concedes, that Talent cannot obtain a no-evidence summary judgment on its own claims. We agree. *See* TEX. R. CIV. P. 166a (i). Therefore, we consider only whether Talent established that it was entitled to traditional summary judgment, and evaluate all issues under that standard of review.

## II. ANALYSIS

### A. Standard of Review

We review a trial court's summary judgment de novo. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). With respect to a traditional summary judgment motion, we review whether the movant met its burden of demonstrating that no genuine issue of

material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P. 166a(c); *B.C. v. Steak N Shake Operations, Inc*., 512 S.W.3d 276, 279 (Tex. 2017).

We consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Cnty. Health Sys. Prof'l Servs. Corp. v. Hansen,* 525 S.W.3d 671, 680 (Tex. 2017). We credit evidence favorable to the nonmovant if a reasonable factfinder could, and disregard contrary evidence and inferences unless a reasonable factfinder could not. *B.C.*, 512 S.W.3d at 279.

**B.      First Issue:  Did Talent prove its breach of contract claim as a matter of law?**

To prove a breach of contract claim, a party must establish, among other things, that there is a valid contract. *See Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied).

A valid, enforceable contract exists when the following elements are shown: (i) an offer; (ii) an acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds on the essential terms of the contract (mutual assent); (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding. *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. ref'd).

That the parties must agree on the essential terms to create a binding contract is well established:

> In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *Bendalin v. Delgado,* 406 S.W.2d 897, 899 (Tex. 1966); *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ). The material terms of the contract must be agreed upon before a court can enforce the contract. Where an essential term is open for future negotiation, there is no binding contract. *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 644 (Tex. App.—Corpus Christi 1984, no writ).

> Each contract should be considered separately to determine its material terms. *Bridewell v. Pritchett,* 562 S.W.2d 956, 958 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.).

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992); *see COC Services, LTD v. CompUSA, Inc.*, 150 S.W.3d 654, 664-65 (Tex. App.—Dallas 2004, pet. denied).

> The Texas Supreme Court has
>
> characterized 'essential terms' as, among other things, 'the time of performance, the price to be paid, . . . [and] the service to be rendered.' *Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010) (quoting *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006)). In the context of employment agreements, typical essential terms include, among others, "compensation, duties or responsibilities." *Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 669 (Tex. 1990).

*City of Houston v. Williams*, 353 S.W.3d 128, 138 (Tex. 2011). Indefiniteness of these terms is fatal to contract formation. *COC*, 150 S.W.3d at 664-65.

We thus begin by examining the Agreement to determine whether it reflects a meeting of the minds on all essential terms in this context. First, it appears to be a standard form dated March 6, 2015, but the termination date was never supplied in the blank provided.

Second, the Agreement says that Vida agrees to engage Talent to perform "services," but does not say what those services are to be. Instead, the Agreement contemplates that Vida would "forward a promotional request form to [Talent]" to book services.

Third, the Agreement does not clearly identify the fees Vida will pay for Talent's services. Although a fee schedule is described in one part of the agreement, another part of the agreement requires Vida to pay Talent "the rates and fees agreed upon by [the parties] at the time [Talent's] services are booked."[1]

In sum, the Agreement does not reflect a meeting of the minds on the services to be provided, what the compensation for the undefined services will be, or when Talent is to provide the services. Accordingly, as a matter of law the Agreement is not a binding contract due to lack

---

[1] The fee schedule identifies a $35 hour off-premises rate (with a three hour minimum), $20 hour for trainings, $40 per hour for special event/on premises, $3 sample cups, and $5-10 additional per hour for last minute requests and cities outside major markets. None of these terms are defined.

of agreement on essential terms, let alone being a fully integrated contract. [2] *See ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.,* 234 S.W.3d 711, 719 n.10 (Tex. App.—Eastland 2007, pet. ref'd) (fully integrated contract is a final and complete expression of all terms in the agreement).

At best, the Agreement is a master services agreement that contemplates further requests for services, using a particular form, which services will be agreed upon in the future. But agreements to agree in the future of this type are not binding contracts. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) (agreement to make a future contract is only enforceable if it is specific as to all essential terms and no terms of the proposed agreement are left to future negotiations).

Here, the evidence does not conclusively establish the existence of a valid contract, and therefore does not establish Talent's right to recover for breach of contract. Accordingly, the trial court's summary judgment was in error. [3]

## C.   Second Issue:  Was summary judgment proper on a sworn account?

Vida also argues that Talent failed to conclusively prove that the account in this case is just and duly owed in light of the parties' course of dealing. We agree.

A sworn account is a procedural tool that limits the evidence necessary to establish a prima facie right to recover on certain kinds of accounts. *See* TEX. R. CIV. P. 185; *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 234 (Tex. App.—Houston [1st Dist.] 2008,

---

[2] Talent argues that Vida's summary judgment evidence concerning the parties' October through December discussions is inadmissible parol evidence, but this argument is misplaced because: (i) the parol evidence rule would come into play only if the Agreement were a binding contract, which we have concluded it isn't; (ii) Talent did not object to any of Vida's summary judgment evidence (*see* TEX. R. APP. P. 33.1(a)); (iii) the parol evidence rule only prevents the enforcement of a prior or contemporaneous agreement that is inconsistent with an integrated agreement (*see Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. Civ. App.—Dallas 1984, no writ)), and (iv) even if the Agreement were a binding contract that included all essential terms, evidence about what occurred from October through December is not prior to or contemporaneous with that agreement. If anything, the evidence pertains to the parties' efforts regarding a subsequent agreement, and the parol evidence rule does not bar such agreements. *See First Bank v. Brumitt*, 519 S.W.3d 95, 111 (Tex. 2017).

[3] Because Talent based its breach of contract summary judgment argument entirely on the March Agreement as the relevant contract and we have determined that the Agreement itself is not a binding contract, we need not address in this context Vida's implied contract arguments.

no pet.). But if a defendant files a verified denial, the verified claim's prima facie effect is destroyed, and the plaintiff must adduce evidence to prove its claim. TEX. R. CIV. P. 185; *Andrews v. East Tx. Med. Ctr.–Athens*, 885 S.W.2d 264, 267 (Tex. App.—Tyler 1994, no writ).

Vida filed a verified denial in response to Talent's sworn account. Thus, to prevail on its suit on account as a matter of law, Talent had to prove that (i) it sold and delivered merchandise or performed services; (ii) the amount or prices were either charged in accordance with an agreement or were customary and reasonable; and (iii) the amount was unpaid. *See Parillo v. Kofohl Sheet Metal Works, Inc.,* No. 05-15-01037-CV, 2016 WL 3547965, at *3 (Tex. App.— Dallas June 28, 2016, no pet.) (mem. op); *Day Cruises Maritime, L.L.C. v. Christus Spohn Health Sys.,* 267 S.W.3d 42, 53 (Tex. App.—Corpus Christi-Edinburg 2008, pet. denied).[4]

Talent's summary judgment motion relied on paragraph 6 of the Hermes affidavit to show that it performed services and sent invoices to Vida pursuant to an express contract, and according to the invoices, $65,729.40 remained unpaid. Talent further insists that there was no implied contract between the parties, and therefore it was not required to show that the rates it charged were usual and customary.

We have concluded, however, that there was no express contract for services from October through December. Consequently, Talent had to present evidence that the rates it charged were usual, customary, or reasonable for the services it provided. *See Powers v. Adams*, 2 S.W.3d 496, 499 (Tex. App.—Houston [1st Dist.] no pet.). Talent adduced no such evidence.

Moreover, the Skloss affidavit Vida submitted in response to Talent's summary judgment motion avers that the Talent invoices are not just and true and "do not reflect commercially

---

[4] Other opinions have described the second element as being that "the amount of the account is 'just,' i.e., the prices charged are pursuant to an express agreement, or in the absence of an agreement, that the charges are usual, customary, or reasonable." *Ellis v. Reliant Energy Retail Services. L.L.C.,* 418 S.W.3d 235, 244 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Lopez v. M.G. Bldg. Materials, Ltd.,* No. 04-08-00550-CV, 2009 WL 1546145, at *2 (Tex. App.—San Antonio June 3, 2009, no pet). (mem. op.). We do not see that there is a material difference between the two statements of the second element, and we have previously stated the second element similar to how our sister courts cited in this footnote have done so. *See Roberts Express, Inc. v. Expert Transp., Inc.*, 842 S.W.2d 766, 770 (Tex. App.—Dallas 1992, no pet.).

reasonable prices based on [Talent's] performance." The affidavit further states that the invoices violate the guarantee that Talent generate sufficient sales to financially justify the promotional campaign. Talent did not challenge or refute this evidence, which raises fact issues about whether the amounts Talent charged Vida were just, true, and customary. *See Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 303–04 (Tex. App.—El Paso 1996), *aff'd*, 966 S.W.2d 482 (Tex. 1998) (holding that the plaintiff suing on sworn account failed to carry its burden of proof that the amount was just when it offered no evidence beyond the agreement and the defendant raised a fact issue as to the validity of the agreement).

Because Talent failed to carry its burden of proof on the sworn account, the trial court's summary judgment was in error. *See* TEX. R. CIV. P. 166a(c).

## D. Third Issue: Did Talent prove that it was entitled to summary judgment on its quantum meruit claim?

Vida also challenges the summary judgment based on quantum meruit. Quantum meruit is an equitable remedy "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (quoting *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).

Generally, a party may recover under quantum meruit only where there is no express contract covering the services or materials furnished. *Vortt*, 787 S.W.2d at 944.

"To recover under quantum meruit, a claimant must prove that: (i) valuable services were rendered or materials furnished, (ii) to the person sought to be charged, (iii) which services or materials were accepted, used and enjoyed by that person, (iv) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by him." *Fulgham v. Fischer*, 349 S.W.3d 153, 159 (Tex. App.—Dallas 2011, no pet.). The measure of damages for a quantum meruit claim is the reasonable value of the

work or services performed. *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 796 (Tex. App.—Dallas 2007, no pet.).

Here, Vida raised genuine issues of material fact concerning the reasonable value of the services Talent performed. According to Vida's summary judgment evidence, the services did not meet the standards agreed upon by the parties, including (i) the appearance and approachability of Talent's representatives; (ii) representatives performing demonstrations according to Vida's method; (iii) representatives' use of cell phones during product demonstrations; and (v) Talent's failure to meet the alleged sales guarantee. Because this evidence raises genuine issues of material fact regarding whether the amount billed to Vida was reasonable under the circumstances, Talent was not entitled to judgment as a matter of law.

### E.     Fourth Issue:  Is Talent entitled to attorney's fees?

We have concluded that there were genuine issues of material fact concerning Talent's breach of contract, sworn account, and quantum meruit claims. Thus, there was no basis to award Talent's attorney's fees. *See Underwater Services, Inc. v. Offshore Drilling Co.*, No. 01-11-00889-CV, 2013 WL 2096640, at *6 (Tex. App.—Houston [1st Dist.] May 14, 2013, no pet.) (mem op.) (no attorney's fees where summary judgment on contract and quantum meruit claims reversed).

### III.     CONCLUSION

We reverse the trial court's summary judgment in its entirety and remand for further proceedings consistent with this opinion.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

170759F.P05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PURA VIDA SPIRITS CO., LLC,
Appellant

No. 05-17-00759-CV      V.

TALENT TREE, LLC, Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-13924.
Opinion delivered by Justice Whitehill.
Justices Lang and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant PURA VIDA SPIRITS CO., LLC recover its costs of this appeal from appellee TALENT TREE, LLC.

Judgment entered June 27, 2018.

–11–