Opinion by: Karen Angelini, Justice
Medical Imaging Solutions Group, Inc. of Texas ("MIS") sued Westlake Surgical, LP d/b/a The Hospital at Westlake Medical Center and WS GP, LLC (collectively, "Westlake") for breach of contract. A jury answered Question 3 of the jury charge affirmatively, finding that Westlake was excused from performance under the contract. The trial court then rendered a take-nothing judgment on MIS's claims. On appeal, MIS argues the trial court erred in submitting Question 3, which combined multiple affirmative defenses in a broad-form question. We conclude the trial court did not err in submitting Question 3 to the jury. We, therefore, affirm the trial court's judgment.
BACKGROUND
MIS is engaged in the business of selling, leasing, and servicing medical imaging equipment such as MRIs, CT scanners, and X-ray machines. Westlake operates a hospital and owns medical imaging equipment, including a CT scanner. In March 2011, MIS and Westlake entered into a service agreement under which MIS would *156 provide maintenance on Westlake's medical imaging equipment over the next five years. The service agreement provided that Westlake would pay MIS monthly fees in exchange for its maintenance services.
In May 2014, MIS sued Westlake, claiming that it had breached the service agreement by failing to pay the monthly service fees, by improperly contacting MIS's subcontractors, and by allowing third parties to work on the equipment. Westlake filed an answer to the suit, which included a general denial, multiple affirmative defenses, and various counterclaims. The case eventually went to trial before a jury.
At trial, MIS asserted Westlake breached the parties' contract under multiple theories. Under one theory, MIS argued that Westlake breached the contract by failing to pay the monthly service fee by the first of each month as required. MIS further argued that Westlake had never intended to timely pay or even to pay within a thirty, sixty, or ninety-day window. MIS claimed that, on average, MIS was over one hundred days in arrearages on its payments under the contract. Under another theory, MIS argued that Westlake breached the contract by allowing other service providers to work on the covered equipment without informing MIS.
Westlake countered that it did not breach the contract by failing to pay the monthly service fee by the first of each month because the parties had modified the terms of the original contract to allow Westlake to pay within a sixty-day window. Westlake also argued that it did not breach the contract because MIS had waived its right to insist upon payments by the first of each month. Additionally, Westlake argued that MIS was the party that had breached the contract by not providing trained technicians who could maintain the equipment up to manufacturer specifications and by refusing to replace a covered part.
Question 3 of the proposed jury charge asked if Westlake's failure to comply with the contract was excused by repudiation, waiver, modification, or fraud. At the charge conference, MIS objected to Question 3 on the basis that "[t]here is no pleading to support prior repudiation," "there is no evidence of waiver," and "there is no evidence to support excuse." The trial court overruled MIS's objections and submitted Question 3 to the jury as stated in the proposed charge.
Question 1 of the jury charge asked, "Did Westlake fail to comply with the [parties' contract]?" The jury answered "Yes" to this question. Question 2 of the jury charge asked, "Did [MIS] fail to comply with the [parties' contract]?" The jury also answered "Yes" to this question. Question 3 of the jury charge asked if Westlake's failure to comply with the contract was excused. Question 3 instructed the jury that Westlake's failure to comply was excused (1) if MIS agreed that a new term would take its place, (2) by MIS's prior repudiation of the service agreement, or (3) if compliance was waived by MIS. The jury answered "Yes" to Question 3.
MIS filed a motion to disregard the jury's answer to Question 3. In the motion to disregard, MIS argued, among other things, that the jury's finding of repudiation, modification, and waiver was not supported by the evidence. Westlake filed a response to the motion to disregard, arguing that its affirmative defenses of repudiation, modification, and waiver were all supported by some evidence. After a hearing, the trial court denied the motion to disregard and rendered judgment that MIS take nothing on its breach of contract claim.
*157 MIS also filed a motion for new trial, which reiterated some of the arguments made in its motion to disregard. The trial court denied the motion for new trial. MIS appealed.
MIS'S ARGUMENTS
On appeal, MIS's overarching complaint is that Question 3 was defective because it improperly combined four separate affirmative defenses, three of which were defective. MIS further complains that Westlake's affirmative defense of repudiation was improperly included in Question 3 because Westlake never pled repudiation and it was not tried by consent. Additionally, MIS complains that Westlake's affirmative defenses of repudiation, modification, and waiver were improperly included in Question 3 because they were not supported by any evidence.
STANDARD OF REVIEW AND APPLICABLE LAW
We review the trial court's decision to submit or refuse a particular jury instruction for an abuse of discretion. Thota v. Young , 366 S.W.3d 678, 687 (Tex. 2012). A trial court has broad discretion to determine proper jury instructions. Thota , 366 S.W.3d at 687 ; Bexar Cnty. Appraisal Dist. v. Abdo , 399 S.W.3d 248, 258 (Tex. App.-San Antonio 2012, no pet.). A jury instruction is proper if it (1) assists the jury; (2) accurately states the law; and (3) finds support in the pleadings and the evidence. Thota , 366 S.W.3d at 687. All issues in the jury charge must be supported by written pleadings and evidence. TEX. R. CIV. P. 278 ; Hyundai Motor Co. v. Rodriguez , 995 S.W.2d 661, 663 (Tex. 1999) ("A trial court must submit in its charge to the jury all questions, instructions, and definitions raised by the pleadings and evidence.").
A trial court may not refuse to submit an issue merely because the evidence is insufficient to support a judgment. Brown v. Goldstein , 685 S.W.2d 640, 641 (Tex. 1985). A trial court may only refuse to submit an issue if there is no evidence to warrant its submission. Id. To determine whether legally sufficient evidence supported the submission of a defense, we examine the record for evidence supporting the theory and ignore all evidence to the contrary. See Elbaor v. Smith , 845 S.W.2d 240, 243 (Tex. 1992).
REPUDIATION
In its third issue, MIS argues the trial court erred in submitting Question No. 3 to the jury because there was no evidence to support the repudiation instruction. In its second issue, MIS argues the trial court erred in submitting Question No. 3 to the jury because repudiation was neither pled nor tried by consent.
The jury was instructed:
Failure to comply by Westlake is also excused by MIS TEXAS' prior repudiation of the same agreement. A party repudiates an agreement when it indicates, by its words or actions, that it is not going to perform its obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.
Was there Evidence of Repudiation?
We first consider MIS's argument that the trial court erred in submitting Question No. 3 because there was no evidence that MIS repudiated the contract. Under the doctrine of repudiation, a party's performance under a contract is excused if the opposing party has repudiated the contract. Saenz v. Martinez , 04-07-00339-CV, 2008 WL 4809217, at *6 (Tex. App.-San Antonio 2008, no pet.) (citing *158 Burford v. Pounders , 145 Tex. 460, 199 S.W.3d 141, 144-45 (1947) ). Repudiation is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance. Gilbert v. Fitz , No. 05-16-00218-CV, 2016 WL 7384167, at *6 (Tex. App.-Dallas 2016, no pet.) ; New York Party Shuttle, LLC v. Bilello , 414 S.W.3d 206, 216 (Tex. App.-Houston [1st Dist.] 2013, pet. denied). Repudiation is accomplished by a contracting party's words or actions indicating it is not going to perform the contract in the future. Gilbert , 2016 WL 7384167, at *6. A party may repudiate a contract either expressly or by a material breach. Hampton v. Minton , 785 S.W.2d 854, 858 (Tex. App.-Austin 1990, writ denied).
To determine whether legally sufficient evidence supported the submission of a defense, we examine the record for evidence supporting the submission of the defense, and ignore all evidence to the contrary. Elbaor , 845 S.W.2d at 243. An instruction is proper "if there is any support in the evidence for" it. Thota , 366 S.W.3d at 687 (emphasis added).
At trial, the evidence showed that the parties' contract required MIS to keep the covered equipment running in accordance with the original manufacturer's specifications. Westlake's CT scanner became inoperable in January 2014. MIS came out to service the CT scanner and determined that the equipment's anode power module (APM) needed replacement. MIS replaced the APM, which was a covered part under the parties' contract. However, after four or five days, the CT scanner stopped working again. MIS came out to service the CT scanner and determined that another part of the CT scanner, the x-ray tube, was causing the APM to go out. The x-ray tube was not a part covered under the parties' contract. MIS engineers predicted that the CT scanner would go down again unless the x-ray tube was replaced. Therefore, MIS refused to replace the APM unless Westlake replaced the x-ray tube.
At this point, Westlake informed MIS that it wanted a second opinion about whether the x-ray tube was malfunctioning. Westlake called the manufacturer to inspect the CT scanner, which recommended the replacement of the CT scanner's highspeed starter board. MIS replaced the highspeed starter board, but this did not resolve the problem. MIS then prepared quotes for Westlake to replace the x-ray tube. However, Westlake once again called the manufacturer, and the manufacturer inspected the CT scanner and determined that the CT scanner did not need a new x-ray tube and that the proper repair was the installation of a non-defective APM. The manufacturer installed a new APM and the CT scanner started working again.
When MIS learned that another service provider had installed a new APM, MIS told Westlake that it was not going to cover the APM installed by the manufacturer because the service had been performed outside of the parties' contract. In response, Westlake's representative, J.J. Jefferson, advised MIS by email that Westlake was going to reduce the amount it owed MIS by the amount Westlake had paid the manufacturer for the new APM. Additionally, Jefferson informed MIS that it also was going to bill MIS for lost revenue.
MIS's executive vice-president, Robert Hagan, testified that after the CT scanner dispute, MIS felt that it needed to "fix" its relationship with Westlake or "end it." Hagan testified that after MIS received the email from Jefferson saying that Westlake was going to bill MIS for lost revenue, MIS had "had our fill." Hagan also testified: "And we just said, you know, that's it, especially with the ... blip in [Jefferson's *159 email] that says, 'You'll get my invoice for lost revenue as soon as we get through this,' and we said, 'Nah, we're just done.' " Hagan further testified: "You know, this is it. I mean we get a letter saying this is what you're gonna do, and we're crediting this, we just had it."
Additionally, the evidence showed that MIS did not perform any other service on Westlake's equipment after the CT scanner dispute involving the APM, which occurred in late January and early February 2014. Westlake presented documents showing that MIS refused to service Westlake's covered equipment in March 2014. Specifically, on March 2, 2014, Westlake sent a service request to MIS via email informing it that its CT scanner was not operating. On March 3, 2014, Westlake informed MIS via email that because MIS had failed to respond to its request in a timely manner, Westlake had requested service from the manufacturer, and the manufacturer would be performing the repairs the following day unless MIS contacted Westlake. The evidence further showed that MIS did not respond to Westlake's March 2, 2014 request for service and the manufacturer repaired the CT scanner by replacing its graphics card.
Therefore, some evidence was presented showing that MIS had indicated by its words or actions that it was not going to perform on the parties' contract in the future. In light of this record, we conclude there was some evidence to support an instruction on Westlake's affirmative defense of repudiation.
Did Westlake Plead the Affirmative Defense of Repudiation?
Repudiation is an affirmative defense which is not available to the defendant unless specifically pleaded. Brantley v. Etter , 662 S.W.2d 752, 757 (Tex. App.-San Antonio 1983, writ ref'd n.r.e.). "In pleading to a preceding pleading, a party shall set forth affirmatively" "any [ ] matter constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94. An affirmative defense must be stated in sufficient detail to give the plaintiff fair notice of what the defensive issue is and the relief that will be sought at trial. UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc. , 176 S.W.3d 595, 609 (Tex. App.-Corpus Christi-Edinburg 2006, pet. denied). The ultimate purpose of pleadings is to give opposing parties notice of a party's claims, defenses, and the relief sought. Perez v. Briercroft Serv. Corp. , 809 S.W.2d 216, 218 (Tex. 1991). When no special exceptions are filed, we construe pleadings liberally in favor of the pleader. Roark v. Allen , 633 S.W.2d 804, 809 (Tex. 1982).
Because no special exceptions were filed in this case, we construe Westlake's pleadings liberally in its favor. See ids="9955517" index="21" url="https://cite.case.law/sw2d/633/804/#p809">id. In its original answer and counterclaim, Westlake generally denied the allegations in MIS's petition, asserted multiple affirmative defenses, and raised several counterclaims. In setting out its affirmative defenses, Westlake stated that MIS's "equitable claims fail based on the doctrines of waiver, estoppel, unjust enrichment, and unclean hands." In setting out its various counterclaims, Westlake made only general factual allegations that MIS "refused to perform Covered Maintenance recommended by" the original equipment manufacturer. In setting out its breach of contract counterclaim, Westlake alleged that MIS's "refusal to perform Covered Maintenance, failure to maintain the Covered Equipment at [original equipment manufacturer] standards, its multiple Services Failures, and other nonperformance under the Service Agreement are breaches of the Agreement."
The general factual allegations made in support of Westlake's breach of contract counterclaim were insufficient to give *160 MIS notice that Westlake was asserting the affirmative defense of repudiation. Nowhere in its pleadings did Westlake indicate that it was relying on MIS's nonperformance to excuse Westlake's obligation to perform under the contract. Furthermore, Westlake listed several other affirmative defenses in its pleadings, but omitted repudiation from this list. After construing Westlake's pleadings liberally in its favor, we conclude that Westlake's pleadings failed to notify MIS that Westlake was asserting the affirmative defense of repudiation.
Was Westlake's Repudiation Defense Tried by Consent?
Rule 67 of the rules of civil procedure provides that issues not raised by the pleadings may be tried by express or implied consent of the parties. TEX. R. CIV. P . 67. Therefore, even though repudiation was not pleaded, the repudiation instruction was proper if repudiation was tried by consent.
Trial by consent applies only when it appears from the record that the issue in question was actually tried, although not pleaded. Case Corp. v. Hi-Class Bus. Sys. of Am., Inc. , 184 S.W.3d 760, 771 (Tex. App.-Dallas 2005, pet. denied). To determine if an issue was tried by consent, the trial court examines the record not for evidence of the issue, but rather for evidence of trial of the issue. Id. A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. Id. However, trial by consent is not applicable when evidence relevant to an unpleaded matter is also relevant to a pleaded issue. Id.
As stated in the trial court's instruction, repudiation occurs when a party indicates by its words or actions, that it is not going to perform its obligations under an agreement in the future, showing a fixed intention to abandon, renounce, or refuse to perform the agreement. See Gilbert , 2016 WL 7384167, at *6 ("[Repudiation] is conduct that shows a fixed intention to abandon, renounce, and refuse to perform the contract.") (internal quotations omitted). After examining the record, we conclude that it contains evidence of trial of Westlake's repudiation defense. On cross-examination, Westlake elicited testimony from MIS's executive vice-president, Hagan, that after the dispute concerning the CT scanner and the APM, MIS refused to service Westlake's equipment. Specifically, the following exchange took place between Westlake's counsel and Hagan:
Counsel: The straw that broke the camel's back was you refused to put in a covered part, correct, you did refuse to put in a power module?
Hagan: That's part of it.
Counsel: Ok. Until they put in a CT [x-ray] tube, right?
Hagan: And got current on their bills.
Counsel: And you told them that you weren't going to work on the system any more until they put that CT [x-ray] tube in, correct.
Hagan: Correct.
Hagan further testified on cross-examination: "At that point in time we felt like the relationship was irreparable and gotten to that point, and we couldn't do any more accommodations, and that was it."
Additionally, Westlake presented documents indicating that MIS also refused to service Westlake's equipment in March 2014. This evidence included an email from a Westlake representative asking MIS to send a technician to repair and replace the graphics card on the CT scanner. The email stated that if MIS did not timely *161 respond to Westlake's service request, it would secure another service provider to perform the repair. Westlake also presented an invoice showing that Westlake ultimately paid another service provider to perform the requested repair. This evidence, combined with Hagan's testimony on direct examination that MIS felt that it needed to end its relationship with Westlake, that MIS had "had [its] fill" with Westlake, and that MIS was "just done" with Westlake, demonstrates that repudiation was tried by consent.
We conclude that the record shows that evidence of repudiation was developed under circumstances indicating that both parties understood that the affirmative defense of repudiation was in the case. See Case Corp. , 184 S.W.3d at 771. Therefore, we conclude that Westlake's repudiation defense was tried by consent.
Because there was some evidence of repudiation and the parties tried repudiation by consent, the trial court did not abuse its discretion by including the repudiation instruction in the charge. We overrule MIS's second and third issues.
MODIFICATION
In its fifth issue, MIS argues the trial court erred in submitting Question No. 3 because there was no evidence to support the affirmative defense of modification. In its fourth issue, MIS argues the trial court erred in submitting Question No. 3 because there was no evidence that Westlake provided any new or additional consideration to support the affirmative defense of modification.
The jury was instructed: "Failure to comply with the term in the [contract] is excused if Westlake and MIS TEXAS agreed that a new term would take its place."
Whether or not a contract has been modified depends on the parties' intentions and is a question of fact. Reytec Constr. Res., Inc. v. Baptist Hosp. of Southeast Texas , No. 09-15-00085-CV, 2016 WL 6900874, at *6 (Tex. App.-Beaumont 2016, no pet.). A valid contract modification includes a meeting of the minds supported by consideration separate from the consideration for the initial contract. Id. ; Walden v. Affiliated Computer Serv., Inc. , 97 S.W.3d 303, 314 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). Consideration may consist of a benefit that accrues to one party or a detriment incurred by the other party. Walden , 97 S.W.3d at 315.
"A trial court may refuse to submit an issue only if no evidence exists to warrant its submission." Elbaor , 845 S.W.2d at 243. However, "[i]f there is some evidence raising an issue, the trial court is required to submit the issue even though the evidence may be insufficient to support an affirmative finding." Beaty v. Bales , 677 S.W.2d 750, 756 (Tex. App.-San Antonio 1984, writ ref'd n.r.e.). Therefore, to determine whether the trial court abused its discretion in submitting an instruction on the affirmative defense of modification, we must examine the record to see if there is some evidence of modification of the parties' contract. See Elbaor , 845 S.W.2d at 243. Furthermore, we must ignore all evidence to the contrary. Id.
The parties' contract provided that Westlake's payments were due on the first of each month and any payment received after the fifth of the month was delinquent and accrued interest at the rate of 1.5% per month until paid in full. Additionally, the contract provided that Westlake would be in default if it failed to pay when due any or all amounts due to be paid by the customer and such default continued for ten days after MIS notified the customer of the failure.
*162 At trial, evidence was admitted indicating that the parties had modified the payment terms in the original contract. On January 16, 2014, Hagan sent an email to Jefferson informing her that MIS had come up with a plan to help Westlake "get caught up" to less than a sixty-day payment delay. The proposed plan required Westlake to pay an additional $5,494.19 week over the course of the next twenty-five weeks. Hagan advised Westlake that if it agreed to the proposed payment plan, MIS would remove Westlake from its "hold" status as long as Westlake "would stay current on its account and we could get current to within 60 days [payment delay] by July of this year." On January 21, 2014, a Westlake account representative, Tiffani Hendrix, responded to Hagan's email by stating that Westlake "should be able to pay the $5500.00 per week beginning this week." On January 22, 2014, Hendrix informed Hagan via email, "I will be paying $5575 per week until we are current." The evidence also showed that Westlake started making weekly payments of $5575, and that the payments were accepted by MIS without objection. Additionally, Jefferson testified that Westlake understood that the payment terms under the contract were changed to sixty days after the payment due date based on the communications it had received from MIS. Thus, there was some evidence that the parties modified the payment terms of the original contract.
As to consideration, MIS argues that a contracting party does not provide consideration for a modification merely by promising what the party is already bound to do by the original contract terms. According to MIS, there was no evidence of new or additional consideration to support a modification of the parties' original contract. We disagree. Under the parties' original contract, Westlake was not entitled to make payments on sixty-day terms, and MIS was not entitled to receive weekly payments from Westlake. Thus, there was some evidence that the alleged modification was supported by new or additional consideration.
We conclude there was some evidence to support an instruction on Westlake's affirmative defense of modification. Therefore, the trial court did not abuse its discretion by including the modification instruction in the charge. We overrule MIS's fourth and fifth issues.[1]
WAIVER
In its sixth issue, MIS argues that the trial court erred in submitting Question No. 3 to the jury because there was no evidence to support Westlake's affirmative defense of waiver.
The jury was instructed: "Failure to comply by Westlake is also excused if compliance was waived by MIS TEXAS."
Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming the right. Anderson Energy Corp. v. Dominion Oklahoma Texas Exploration & Prod., Inc. , 469 S.W.3d 280, 299 (Tex. App.-San Antonio 2015, no pet.) (citing Jernigan v. Langley , 111 S.W.3d 153, 156 (Tex. 2003) ).
*163 To find an implied waiver based on a party's conduct, the party must say or do something inconsistent with an intent to rely upon the right. Id. "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." Jernigan , 111 S.W.3d at 156. Waiver is ordinarily a question of fact. Jernigan , 111 S.W.3d at 156 ; Anderson Energy , 469 S.W.3d at 299.
At trial, the evidence showed that Westlake repeatedly failed to make timely payments and was delinquent on its account over the span of almost three years. Under the parties' original contract, Westlake's payments were due on the first of each month and any payment received after the fifth of the month was considered delinquent and accrued interest at the rate of 1.5% per month until paid in full. Additionally, the parties' original contract stated that Westlake would be in default if it failed to pay when due any or all amounts due to be paid by the customer and such default continued for ten days after MIS notified the customer of the failure. Nevertheless, evidence was admitted indicating that MIS did not formally declare Westlake in default until March 2014, which was after the controversy involving the CT scanner and the APM. Additionally, evidence was admitted indicating that MIS never charged Westlake interest for its failure to make timely payments.
Furthermore, the evidence showed that, notwithstanding Westlake's delinquent account status, MIS informed Westlake that it would be in compliance with its contractual obligations if it maintained sixty-day payment terms. Specifically, in a December 17, 2013 email, Hagan informed Westlake that a sixty-day payment delay was acceptable. In a December 23, 2013 email, MIS's chief financial officer, Bates, sent a letter to Westlake reiterating that Westlake needed to bring its "account current or at least [to] a 60 day past due immediately." And, in a January 16, 2014 email, Hagan informed Westlake that it had come up with a plan to get Westlake's account within a sixty-day payment window. In sum, evidence was admitted showing that MIS said and did things inconsistent with an intent to rely upon the payment term provisions in the original contract, and thus, waived portions of the parties' contract.
We conclude that the instruction on the affirmative defense of waiver was supported by some evidence. Therefore, the trial court did not abuse its discretion by including the waiver instruction in the charge.
BROAD-FORM SUBMISSION
In its first issue, MIS argues the trial court erred in submitting Question No. 3 because it was a broad-form question that contained defective instructions on the affirmative defenses of repudiation, modification, and waiver. MIS argues that if any of the instructions on repudiation, modification, and waiver was submitted in error, the submission of Question No. 3 was harmful error and the trial court's judgment must be reversed.
To support its argument, MIS relies on Crown Life Ins. Co. v. Casteel , 22 S.W.3d 378 (Tex. 2000). In Casteel , the Texas Supreme Court held that when a trial court submits a broad-form liability question that erroneously commingles valid and invalid liability theories, the error is harmful when the appellate court cannot determine if the jury based its verdict on an improperly submitted invalid theory. Id. at 388-89. MIS argues that Casteel 's reasoning extends to situations in which a single broad-form question commingles valid and invalid affirmative defenses. See *164 Pantaze v. Welton , No. 05-96-00509-CV, 1999 WL 673448, *6 (Tex. App.-Dallas 1999, no pet.) (not designated for publication) (applying Casteel to affirmative defenses). However, we need not decide if Casteel 's reasoning applies when valid and invalid affirmative defenses are commingled in a single broad-form question because the broad-form question in this case did not commingle valid and invalid affirmative defenses. As we determined in our consideration of MIS's other issues, the instructions on repudiation, modification, and waiver were not defective. We, therefore, overrule MIS's first issue.
CONCLUSION
The trial court's judgment is affirmed.

MIS also argues there was no evidence of a modification of the parties' contract that would excuse "complete performance" by Westlake, and therefore, the inclusion of this defense in Question No. 3 was reversible error. However, this complaint was not made to the trial court and, therefore, is not preserved for our review. See Tex. R. App. P . 33.1(a)(1)(A) ; State Dept. of Highways & Pub. Transp. v. Payne , 838 S.W.2d 235, 241 (Tex. 1992) (providing that the general test to determine whether a party has preserved its complaint about error in the jury charge is "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.").