

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00673-CV

**BITTERROOT HOLDINGS, LLC**,
Appellant

v.

**HB PROPERTIES I, LLC**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-01352
Honorable David A. Canales, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Karen Angelini, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: December 27, 2018

AFFIRMED IN PART, DISMISSED IN PART

Bitterroot Holdings, LLC appeals a take-nothing judgment rendered after a bench trial on its trespass to try title claim against HB Properties I, LLC. Bitterroot argues the trial court's judgment is not supported by the pleadings or legally sufficient evidence, and the trial court's findings of fact are insufficient to support the judgment. HB conditionally cross-appeals, requesting that if we reverse the trial court's judgment, we remand instead of render judgment. We affirm the trial court's judgment and dismiss HB's cross-appeal as moot.

**FACTUAL BACKGROUND**

The facts of this case are undisputed.[1] This appeal arises from a trespass to try title suit involving a dispute over who owns superior title to residential property. Bitterroot filed the suit, and through its trespass to try title claim, alleged its title to the subject property is superior to HB's title. Bitterroot's method of proving superior title was by tracing its title and HB's title to a common source: Maria Montemayor.

In 2005, Maria Montemayor borrowed money from the Union Bank of Indianapolis to purchase the subject property. The various note holders and loan servicers are referred to collectively as "the Bank." Maria and her husband, Gilbert Montemayor, were unable to make payments and defaulted on the note. They also defaulted on their payment obligations to the Shavano Rogers Ranch Point Bluff Homeowners Association and the Point Bluff Swim Club, Inc., which are referred to collectively as "the HOA."

In September 2009, the Bank accelerated the note and sent the Montemayors a notice of acceleration. In December 2009, the Bank sent the Montemayors another notice of acceleration, stating the foreclosure sale would be held in January 2010. The foreclosure sale did not take place in January 2010. The Bank posted numerous notices of foreclosure sales, but the Bank did not foreclose on the property until November 2015.

However, in 2011, the HOA foreclosed on its assessment lien against the property. The HOA purchased the property at the foreclosure sale. In March 2015, Bitterroot purchased the property from the HOA and recorded the deed that same month. Then, in November 2015, HB purchased the property from the Bank at the Bank's foreclosure sale.

---

[1] In its brief, HB "generally agrees with [Bitterroot]'s statement of facts." Appellee's Br. at 6. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

**PROCEDURAL BACKGROUND**

In January 2016, Bitterroot filed suit against HB. HB countersued Bitterroot and alleged its lawsuit against HB was frivolous. After HB answered, Bitterroot filed a traditional motion for summary judgment. Bitterroot's ground for summary judgment was that HB's title was invalid because the Bank's foreclosure sale to HB was barred by the four-year statutory limitations period, which commenced in September 2009 when the Bank accelerated the note and ended in 2013, two years before the Bank's November 2015 foreclosure sale to HB. Bitterroot also argued there was "no evidence of rescission" of the acceleration of the note. In response, HB argued there was evidence of rescission because after 2009, the Bank continued to accept payments from the Montemayors. HB filed a no-evidence cross-motion for summary judgment. The summary judgment motions were denied.

The case was tried to the bench. The trial court admitted numerous documents into evidence, and the arguments and witness testimony related primarily to the issue of whether the Bank rescinded or abandoned its acceleration of the note. HB sought to prove the Bank abandoned the acceleration of the note through the deposition testimony of Gilbert Montemayor. The trial court sustained Bitterroot's objections to the vast majority of Gilbert's deposition testimony, but admitted testimony showing he continued to make payments on the note after the Bank accelerated the note and the Montemayors had reached a payment agreement with the Bank. HB also offered an exhibit containing a billing statement, which HB argued was additional evidence of abandonment or rescission of the note's acceleration.

The trial court took the case under advisement and thereafter rendered a final judgment. In the final judgment, the trial court sustained Bitterroot's objection to HB's billing-statement exhibit and denied relief on Bitterroot's trespass to try title claim. The trial court then made findings of

fact and conclusions of law at Bitterroot's request. The trial court found the Bank "abandoned" and "rescinded" the acceleration of the note and "reinstated" the note, the Bank's foreclosure sale to HB was not barred by the statute of limitations, and HB had superior title to the subject property. Bitterroot filed a timely notice of appeal, and HB filed a timely cross-notice of appeal.

### BITTERROOT'S APPEAL

Bitterroot contends the trial court erred by not finding it had superior title to the property. Bitterroot argues it conclusively established its claim of title is superior to HB's claim of title because the evidence conclusively established HB's claim to ownership was barred by limitations. Bitterroot further argues HB did not plead and prove its affirmative defense of abandonment of the note's acceleration, and the trial court erred by admitting HB's evidence for purposes of proving abandonment. Additionally, Bitterroot argues the trial court's findings are insufficient to support the judgment.

Overall, HB does not dispute any aspect of Bitterroot's argument other than the issue of abandonment of the note's acceleration, also referred to as "rescission" of acceleration and "reinstatement" of the note. The parties dispute whether the Bank's abandonment of acceleration is a material fact that Bitterroot had the burden to prove as part of its prima facie case, or an affirmative defense that HB had the burden to plead, to prove, and on which to obtain findings. HB argues in the alternative that even if it had the burden to plead and prove abandonment, the issue was tried by consent and there was sufficient evidence and findings to support the trial court's judgment. Turning to our analysis, we will initially assume that abandonment or rescission of acceleration, or reinstatement of the note, is an issue that HB had the burden to plead, prove, and obtain findings on, and then we will address the issue if it is necessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

**A. Trial by Consent**

HB did not plead abandonment or rescission of acceleration or reinstatement of the note in its amended answer or living pleading. "Trial by consent can cure lack of pleading." *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018). "The trial court has broad discretion to determine whether an unpleaded issue was tried by consent." *Adeleye v. Driscal*, 544 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "To determine whether an issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence that the issue was tried." *Id.* "The unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested." *Id.* Other considerations in determining whether an issue is tried by consent are whether both parties presented evidence and advanced their respective positions on the issue. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445-46 (Tex. 1993).

Bitterroot argues that even if abandonment was tried by consent, the pleadings must be amended to support the judgment. Bitterroot cites to Texas Rule of Civil Procedure 301, which provides that the trial court's judgment "shall conform to the pleadings." TEX. R. CIV. P. 301. But Rule 67, which governs trial by consent, provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues ***may*** be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, ***but failure so to amend shall not affect the result of the trial of these issues***; provided that written pleadings, before the time of submission, shall be necessary to the submission of questions, as is provided in Rules 277 and 279.

*Id.* R. 67 (emphasis added). Rules 277 and 279 relate to the jury charge and submission of questions to the jury and do not apply in bench trials, such as the trial in this case. *See id.* RR. 277, 279.

Consequently, as the Supreme Court of Texas stated in *Bos*, which involved a bench trial, "[t]rial by consent can cure lack of pleading." *See* 556 S.W.3d at 306.

    *1.   Chronology of Proceedings Relevant to Trial by Consent*

During Bitterroot's opening statement, counsel for Bitterroot stated, "The evidence will show, I suggest to you, Judge, that the bank never backed away or waived or rescinded its plan to proceed with a foreclosure on their property." Counsel further noted that "nothing in the intervening period backed away or waived from that acceleration of the plan [sic] to proceed with the foreclosure." Counsel for Bitterroot also stated, "They're going to tell you that the bank waived its acceleration and, when a bank waives its acceleration, it can reinstate the underlying debt and you go back to a monthly payment schedule. But there would have to be evidence of the bank's intent, and I don't think there will be any evidence like that."

During HB's opening statement, counsel for HB stated, "[T]he two defenses that we have -- or the two claims that we're going to assert here, one is that their claim for foreclosure -- that our foreclosure was void is absolutely incorrect because the lender abandoned its acceleration. And I've got a lot of case law to show you on that. If -- The case law says that if the acceleration is abandoned -- and there's several ways that can happen -- then it resets the statute of limitations." When counsel for HB began addressing the counterclaim against Bitterroot for filing a frivolous suit, Bitterroot's counsel objected that the statements about the counterclaim were not based on admissible evidence. Bitterroot's counsel did not object to HB's statements about abandonment of the note's acceleration. After addressing the counterclaim, counsel for HB made additional statements about abandonment:

> There [are] three reasons why the evidence is going to show that the lender abandoned – that's the term of art used in many cases -- the acceleration. . . . So number one is the lender, by its conduct, by accepting payments, abandoned the acceleration. There's case law after case law that supports that. The second thing is

the lender withdrew its notices and withdrew the last notice in 2011. That, again, constitutes an abandonment of the acceleration, as found in the Fifth -- by the Fifth Circuit in a case against this entity, Your Honor, that I'll show you in a minute. And fourth -- the third one is that there's even evidence from Mr. Montemayor that he had an agreement -- and I'm going to read you his deposition -- he had an agreement with the lender to restructure the loan and abandon the foreclosure notice, the acceleration.

Counsel for HB continued to frame his argument around abandonment throughout HB's opening statement, without drawing an objection from Bitterroot.

HB later sought to prove it abandoned its acceleration of the note by introducing Gilbert's testimony. Bitterroot objected to the admission of the evidence as hearsay and as irrelevant because HB did not plead abandonment as an affirmative defense. HB responded by arguing Bitterroot could not be surprised by the defense because HB had asked Gilbert questions about abandonment during his deposition, and HB had relied on its abandonment defense in response to Bitterroot's motion for summary judgment. HB requested the trial court grant it "leave to make a trial amendment" in the event the trial court were to sustain Bitterroot's objection. The trial court asked for authority supporting abandonment was an affirmative defense. Counsel for Bitterroot responded:

> Judge, there is no case that says the word "abandonment" is an affirmative defense. There are cases cited to you in the trial brief that say it is akin and the same as waiver. And those same cases go on to say that waiver is an affirmative defense, and those same cases go on to analyze the abandonment as an affirmative defense. But I can't tell you that there is a case that holds that it is an affirmative defense. To -- I -- We're not surprised, Judge.
>
> I'm not surprised because . . . we've talked about this issue throughout the case. It matters -- I want to bring up the issue of affirmative defense now because it matters. This is an issue on which they bear the burden of proof. We're going to have a lot of discussion about that. Beyond all of that, this right here is hearsay. What the bank supposedly told Mr. Montemayor is hearsay, . . . .

The trial court ruled:

> Okay. I'll sustain on hearsay. As far as the abandonment, again, I don't I didn't believe, either, that there was anything outright saying that it was an affirmative

defense, and that's why I had asked you. So at this point I don't even think there would be a need for you to do a trial amendment on that. You can proceed on that.

The trial court admitted Gilbert's further testimony about his conduct and the Bank's after the Bank accelerated the note, and Bitterroot did not object on the grounds that HB failed to plead abandonment. When asked by the trial court why HB sought to offer Gilbert's testimony, HB's counsel explained HB intended to prove that the Montemayors "continued to make payments after the acceleration, which would constitute an abandonment by the lender." In cross-examination, Bitterroot asked Gilbert about whether he had anything in his possession indicating the Bank had de-accelerated the note. Gilbert responded, "In my possession, no."

HB called Bitterroot's expert witness, H. Anthony Hervol, to testify. Hervol began his testimony stating that he was engaged "to take a look at documents, primarily public record type documents, and try to form some kind of opinion as to whether or not [the Bank] had abandoned acceleration." Hervol testified extensively about abandonment of the note's acceleration, and Bitterroot never objected to his testimony on the grounds that HB did not plead abandonment as an affirmative defense. Bitterroot's counsel also asked questions of Hervol about the issue of abandonment.

During closing argument, Bitterroot argued extensively that abandonment was an affirmative defense, but then clarified, "I'm not telling you that to talk about the pleading issue. They're the ones who raised this idea. It's their burden to convince you that there was an abandonment or a waiver." Instead, Bitterroot argued HB failed to meet its burden of proof on the abandonment issue. Bitterroot then responded to HB's position on abandonment. HB's closing argument was dedicated almost exclusively to the abandonment issue, and in rebuttal, Bitterroot again framed its argument around the issue of abandonment. After the exchange regarding the

relevance of Gilbert Montemayor's testimony, Bitterroot did not object to the trial court considering the issue of abandonment.

  2. *Analysis*

  At trial, the abandonment issue was first raised by Bitterroot in its opening statement. HB also raised the issue in its opening statement, and Bitterroot did not object. The only time Bitterroot objected to the issue of abandonment being tried was when HB first sought to offer Gilbert Montemayor's deposition testimony into evidence. But when HB requested a trial amendment, Bitterroot admitted it was not surprised by the issue and was well aware that abandonment was HB's primary defense in this case. After Gilbert's deposition testimony was admitted, HB elicited extensive testimony from an expert witness on the issue of abandonment without objection from Bitterroot. The record shows Bitterroot hired the expert witness to assess whether the Bank had abandoned the note's acceleration. Bitterroot also elicited testimony on the issue to advance its position on the issue of abandonment. Abandonment was also the primary issue raised in both parties' closing arguments. In sum, the issue of abandonment was at the center of the entire trial.

  Bitterroot contends it objected to trying the issue of abandonment by objecting to Gilbert's testimony as irrelevant. The trial court did not rule on Bitterroot's relevance objection. *See* TEX. R. APP. P. 33.1(a)(2) (generally requiring a ruling on the objection to preserve the issue). Moreover, the trial court subsequently admitted parts of Gilbert's testimony on the issue of abandonment, and Bitterroot did not further object to the admission of evidence on the issue based on the lack of pleadings. Additionally, the purpose of pleading an affirmative defense is to give the opposing side fair notice of the defense, and leave for a trial amendment to the pleadings must be given absent surprise or prejudice. *See* TEX. R. CIV. P. 63, 66; *Med. Imaging Sols. Grp., Inc. of Tex. v. Westlake Surgical, LP*, 554 S.W.3d 152, 159 (Tex. App.—San Antonio 2018, no pet.). When HB

sought leave to amend its pleadings, Bitterroot admitted it was not surprised by the issue of abandonment being tried, clarified its objection to emphasize which party had the burden of proof on the issue, and told the trial court there was going to be "a lot of discussion about" the issue of abandonment.

Viewing Bitterroot's relevance objection in context of the subsequent discussion about the objection, Bitterroot admitted it was not surprised by the issue, clarifying that its arguments about abandonment being an affirmative defense was raised only to stress that HB had the burden of proof, and representing to the trial court that there would be further development of the issue of abandonment during the trial. And because Bitterroot did not object when HB again offered Gilbert's deposition testimony on the issue of abandonment, Bitterroot waived the issue. *See Austin v. Weems*, 337 S.W.3d 415, 421 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (stating a preserved error may be waived by subsequent conduct). Before and after the relevance objection, Bitterroot and HB advanced their respective positions on the issue of abandonment, and Bitterroot elicited evidence and did not further object to HB's evidence on the issue. *See Sage St. Assocs.*, 863 S.W.2d at 445-46; *Adeleye*, 544 S.W.3d at 484. The record establishes both parties understood the issue of abandonment was being contested. *See Adeleye*, 544 S.W.3d at 484. Considering the relevant trial proceedings as a whole, we hold the issue of abandonment or rescission of the note's acceleration, or reinstatement of the note, was tried by consent. *See Sage St. Assocs.*, 863 S.W.2d at 445-46; *Adeleye*, 544 S.W.3d at 484. Thus, even if HB failed to satisfy its burden to plead the issue of abandonment of the note's acceleration, the lack of pleading was cured by the trial of the issue by consent. *See Bos*, 553 S.W.3d at 306.

**B. Legal Sufficiency**

Bitterroot argues HB did not satisfy its burden to present any evidence to support the trial court's findings on the abandonment issue. Assuming HB had the burden to prove abandonment of the note's acceleration, we apply the no-evidence or legal sufficiency standard set out in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). Under the *City of Keller* standard: "No evidence exists when there is: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact." *Shipley v. Vasquez*, 534 S.W.3d 482, 488 (Tex. App.—San Antonio 2017, pet. denied).

"Even when the [note] holder exercises its option to accelerate, the holder can abandon acceleration by continuing to accept payment without exercising any of the remedies available to it upon default, by agreement, or by other actions." *Brannick v. Aurora Loan Servs., LLC*, No. 03-17-00308-CV, 2018 WL 5729104, at *2 (Tex. App.—Austin Nov. 2, 2018, no pet. h.) (mem. op. on reh'g). Gilbert testified that after the Bank accelerated the note, he and Maria had a written agreement with the Bank that they would continue to make payments, and that they did continue to make payments to the bank. His testimony, viewed in a light most favorable to the verdict, supports the trial court's abandonment findings, but only if the evidence was properly admitted. *See Shipley*, 534 S.W.3d at 488.

Bitterroot contends the trial court erred by admitting Gilbert's deposition testimony over Bitterroot's trial objections that the testimony was hearsay and not the best evidence. We review a trial court's rulings on the admission or exclusion of evidence under an abuse of discretion standard. *Sanchez v. Balderrama*, 546 S.W.3d 230, 234 (Tex. App.—El Paso 2017, no pet.). The

test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). A statement is hearsay only if "the declarant does not make [the statement] while testifying at the current trial or hearing" and it is offered "to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). And under the best-evidence rule, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith." *Id.* R. 1004(a).

Gilbert's testimony that he and Maria had an agreement with the Bank to continue to make and accept payments on the note was not testimony about an out-of-court statement that he, or someone else, had made, offered to prove the truth of the matter asserted. *See id.* R. 801(d); *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 434 (Tex. App.—Corpus Christi 2016, no pet.). Neither is his testimony that he continued to make payments to the Bank an out of court statement. Consequently, his testimony was not hearsay. Furthermore, Gilbert testified the written agreement he had with the Bank was "probably thrown away" by the sheriff. There was therefore some basis for the trial court to admit Gilbert's testimony about the contents of the lost or destroyed written agreement. *See* R. 1004(a). Because the trial court did not abuse its discretion by admitting Gilbert's testimony over Bitterroot's objections, the evidence was properly admitted. *See Broders*, 924 S.W.2d at 151. Thus, if HB had the burden to prove the Bank abandoned the note's acceleration, HB satisfied that burden.

## C. Sufficiency of the Trial Court's Findings

Bitterroot argues the trial court's findings are insufficient to support the judgment because there were acceleration notices in September 2009 and in December 2009. The trial court made findings that, "The actions of the parties constitute an abandonment of the September 14, 2009

acceleration of the note," and "The actions of the parties constitute a rescission of the September 14, 2009 acceleration of the note." The trial court also made other, broader findings, on the issue. According to Bitterroot, the trial court's findings are insufficient because the trial court did not make any express findings about whether the Bank specifically abandoned the December 2009 acceleration of the note.

A trial court's findings of fact have the same force and dignity as a jury's verdict. *See Milt Ferguson Motor Co. v. Zeretzke*, 827 S.W.2d 349, 352 (Tex. App.—San Antonio 1991, no writ). When the trial court makes findings of fact and conclusions of law, we may review the findings of fact for legal and factual sufficiency. *Dodeka, L.L.C. v. Campos*, 377 S.W.3d 726, 729 (Tex. App.—San Antonio 2012, no pet.). "We review de novo the trial court's legal conclusions based on the findings of fact to determine their correctness." *Id.* "Findings which deal with the ultimate and determinative fact questions of the case are not to be disregarded simply because they appear in the 'conclusions of law.'" *See Posner v. Dall. Cty. Child Welfare Unit of Tex. Dep't of Human Servs.*, 784 S.W.2d 585, 587 (Tex. App.—Eastland 1990, writ denied).

The trial court's findings of fact and conclusions of law "taken together [must be] enough to support the judgment." *McAshan v. Cavitt*, 149 Tex. 147, 154, 229 S.W.2d 1016, 1020 (1950). The purpose of findings of fact is to discover the grounds upon which the trial court found supported the judgment and to avoid presumed findings "on all grounds raised by the pleading and proof." 4 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE, at 11 (2d ed. 2001); *cf. Jerry v. Ky. Cent. Ins. Co.*, 836 S.W.2d 812, 816 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("Findings of facts are not proper if they do not relate to ultimate or controlling issues."). "[F]indings of fact and the conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be

in harmony with the judgment and to support it." *Gulf Liquid Fertilizer Co. v. Titus*, 163 Tex. 260, 270, 354 S.W.2d 378, 385 (1962).

The trial court found the note was accelerated in September 2009, and concluded that the actions of the parties constitute an abandonment and rescission of the September 2009 note, specifically. Although undisputed evidence shows the note was accelerated again in December 2009, none of the trial court's findings specifically refer to the December 2009 acceleration. However, the trial court also found, more broadly, that "[t]he actions of the parties constitute a reinstatement of the note," which is an alternative description of the issue of abandonment or rescission of the note's acceleration. *See, e.g.*, *Nationstar Mortgage, LLC v. Landers*, No. 12-17-00047-CV, 2018 WL 1737013, at *6 (Tex. App.—Tyler Apr. 11, 2018, no pet.) (mem. op.) (using "reinstatement" of a note as an alternative way of saying the acceleration of a note has been abandoned or rescinded); *Hardy v. Wells Fargo Bank, N.A.*, 01-12-00945-CV, 2014 WL 7473762, at *5 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.) (same).

The trial court's findings, viewed as a whole, support and reveal the legal basis of the trial court's judgment. *See McAshan*, 229 S.W.2d at 1020. If HB had the burden to obtain sufficient findings on the issue of abandonment or rescission of the note's acceleration, or reinstatement of the note, we hold HB satisfied that burden. Because the issue of abandonment was tried by consent, there was evidence supporting the trial court's findings, and the trial court's findings are sufficient to support the judgment, the judgment must be affirmed. As a result, deciding whether HB had the burden to plead, prove, and obtain findings on the issue of abandonment is not necessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1. We therefore need not decide that issue.

**HB's Conditional Cross-Appeal**

HB's cross-appeal is conditioned upon us reversing the trial court's judgment. Because we affirm the trial court's judgment, HB's cross-appeal is moot. *See Olley v. HVM, L.L.C.*, 449 S.W.3d 572, 577 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *Aguilar v. Leland Pennington, Inc.*, No. 02-16-00407-CV, 2017 WL 4172570, at *1 (Tex. App.—Fort Worth Sept. 21, 2017, no pet.) (mem. op.).

**Conclusion**

We affirm the trial court's judgment. HB's cross-appeal is dismissed as moot.

Luz Elena D. Chapa, Justice