

# NUMBER 13-20-00532-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**SOCORRO GONZALEZ,**                                                              **Appellant,**

**v.**

**ANTONIO GONZALEZ,**                                                              **Appellee.**

---

## On appeal from the 332nd District Court
## of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Silva
### Memorandum Opinion by Justice Silva

Appellant Socorro Gonzalez sued her brother, appellee Antonio Gonzalez, seeking to recover possession and title of an apartment complex, the subject property, purchased by Socorro. Following a bench trial, the trial court found in favor in part for Socorro and in part for Antonio. By three issues, Socorro argues the trial court: (1) "erred in entering a judgment that was based upon legally and factually insufficient evidence"; (2) "erred in its

evidentiary rulings, which probably caused the rendition of an improper judgment"; and (3) abused its discretion in denying her motion for new trial. We affirm.

## I. BACKGROUND

### A. The 2011 Agreement

It is undisputed that Socorro obtained a warranty deed with a vendor's lien in May 2008 on the subject property. Socorro enlisted Antonio to manage the subject property, which consisted of six apartment units in Hidalgo County. In May 2011, Socorro and Antonio executed a document entitled, "Real Estate Agreement" (2011 Agreement), which included the following "Stipulations":

1. Antonio is the equitable owner of the real estate described above, subject to (a) Lone Star National Bank note executed by [Socorro], (b) Rio Tax Loan for taxes, and (c) the sum of Forty Thousand Dollars ($40,000.00) owed to [Socorro] by Antonio;

2. [Socorro] agrees that she will execute a renewal and extension of the Lone Star National Bank note provided Antonio pays-off the Rio Tax loan note;

3. Parties agree that the property shall be listed with a broker for sale for an amount of at least $290,000.00 plus commission to broker(s);

4. [Socorro] and Antonio will equally split proceeds above $290,000.00 in the event that such sale takes place[;]

5. [Socorro] will convey the property to Antonio if Antonio is able to (a) pay-off [Socorro's] claim of $40,000.00 and (b) Antonio is able to obtain his own financing on the Lone Star National Bank note;

6. During the pendency of a potential sale, Antonio shall pay [Socorro] interest monthly on the $40,000.00 owed her at the rate of 18% per annum, which equates to $600.00 per month.

7. Antonio shall continue to be entitled to rent revenues on the property provided that he makes payment on both the Lone Star National Bank note and Rio Tax note.

## B.    The Parties' Pleadings

In January 2016, alleging Antonio had breached the 2011 Agreement, Socorro sued Antonio for breach of contract, trespass to try title, trespass to real property, declaratory judgment, conversion of property and rent, gross negligence, and quantum meruit. Antonio timely filed a general denial. In an amended answer and counterclaim, Antonio raised conversion and quantum meruit causes of action, alleging that he had "expended no less than $275,000 over the last few years in labor, upkeep, improvements, insurance, taxes, interest payments to his sister, loan payments[,] and in maintenance" on the subject property.

## C.    Bench Trial

The trial court held a bench trial on March 21, 2019. According to Socorro, upon her purchase of the property in 2008, she tasked Antonio with collecting rent from tenants and managing the property's "expenses." Socorro testified that she agreed to divide any monthly profits with him in exchange for his services but maintained that Antonio controlled the property's finances at all times, and she never personally recovered any profit. Socorro discovered Antonio had placed a mechanic's lien on the property when she attempted to sell it in 2010. Socorro testified that she confronted Antonio regarding the lien, and he responded with "physical aggressions" and "threats."

Despite deteriorating relations between the parties, Socorro and Antonio executed the 2011 Agreement. Socorro testified, "From 2008 to 2010, I had spoken to [Antonio] due to the circumstances [sic] if he could pay me the investment that [sic] he could stay with the property. And during that time he gave me $10,000.00. So then the [2011

3

Agreement] was made for $40,000." Socorro maintained that after executing the agreement, Antonio made only two payments of $600.00 toward the $40,000, and he "assaulted" her on the same day he made the second payment in July 2011. Following the alleged assault and his subsequent arrest,[1] they "had no communications," and Antonio remained in physical possession of the property up until November 2016 when the trial court issued an order removing Antonio from the property. Socorro further testified that upon Antonio's removal, she learned he was four months in arrears on the mortgage and taxes. However, on cross-examination, Socorro testified that Antonio made mortgage payments and paid taxes and insurance on the property for the eight years he managed it "until the day that the [trial court] returned [her] property and [she] took possession . . . in November [2016]."

Antonio testified that his involvement in the property predated the 2008 deed because although he was not listed as a grantee on the deed, he had been the one who approached his sister about purchasing the property and negotiated the sale on her behalf. According to Antonio, he thereafter managed the property from 2008 to 2016 and complied with all applicable terms of the 2011 Agreement. Antonio testified that he made two direct $600.00 payments to Socorro and then, per Socorro's request, all other payments were made in cash and given to Socorro through their mother. Antonio maintained that he made the $600.00 monthly payments until his removal from the property in 2016 because Socorro thereafter refused to accept any payment. Antonio testified that not including the $326,472.52 paid in "improvements, repairs, taxes,

---

[1] Antonio testified that his arrest in 2011 had been "for trespassing[,] not for assault."

4

insurance, mortgages," he paid Socorro "$39,700.00, plus $10,000.00 that she admitted during [her] deposition" in accordance with the 2011 Agreement.

Following the parties' respective testimony and closing arguments, the trial court requested that they each submit written briefs.

## D. Final Judgment

The record[2] indicates that the trial court held another hearing after the bench trial and prior to its issuance of a signed final judgment, but the transcript for the hearing was not provided on appeal. The trial court issued its final judgment on September 11, 2020:

> BE IT REMEMBERED that on March 21, 2019, came to be heard the above-entitled and numbered cause at trial. [Socorro] appeared in person through counsel of record before the Court and announced ready for trial. [Antonio] appeared in person through counsel of record before the Court and announced ready for trial. Trial began and commenced until its conclusion on March 21, 2019. The Court having considered the pleadings, official records on file, the testimony of witnesses, the exhibits admitted into evidence, the full record of the case, the applicable rules and, is of the opinion and hereby renders judgment entered in favor of [Antonio] in part and [Socorro] in part.
>
> The Court finds:
>
> [(]A) The May 27, 2011 agreement between [Socorro] and [Antonio] constituted a valid and enforceable contract regarding the real property . . . (hereinafter referred to as the "Subject Property");
>
> [(]B) The May 27, 2011 agreement between [Socorro] and [Antonio] constituted a waiver of [Socorro's] right to seek fee simple title to the Subject Property and [Antonio's] waiver to seek legal title to the Subject Property;
>
> [(]C) [Socorro] failed to prove that [Antonio] materially breached the May 27, 2011 agreement;

---

[2] Socorro filed a "Motion for Objection and Entry of Judgment" on August 1, 2019, wherein she attached the case summary detail report and argued that Antonio's proposed final judgment "does not comport[] or reflect[] the Court['s] [oral] ruling."

5

[(]D) [Antonio] failed to prove that [Socorro] is guilty of conversion of [Socorro's] equitable interests in the Subject Property;

It is THEREFORE ORDERED, ADJUDGED, and DECREED that:

[(]1) The Subject Property shall be listed for sale within 30 days from the date that this judgment becomes final and appealable;

[(]2) [Socorro] and [Antonio] shall each receive fifty percent of the sale proceeds that are in excess of $290,000 minus the cost of the sale[,] and [Antonio] shall recover the initial $290,000 from the sale; [Antonio] shall pay [Socorro] $40,000 regardless of the sale price[;]

[(]3) Each party shall bear the expense of their respective attorney's fees;

[(]4) All costs of court are taxed against those incurring the same;

[(]5) This is a final and appealable judgment and disposes of all parties and all claims. All relief not expressly granted herein is denied.

## E.    Motion for New Trial and Appeal

In Socorro's motion for new trial, she argued that the language in the trial court's final judgment was contrary from its oral rendition and complained that the evidence at trial was insufficient to support the trial court's order. This appeal followed.

On April 12, 2022, this Court ordered this case abated and remanded to the trial court for clarification of its September 11, 2020 order rendered in favor in part of each party.[3] We noted that neither party requested written findings of facts and conclusions of law, and on appeal, the parties disputed that the September 11, 2020 order, in fact, addressed all claims and challenged the manner in which the claims were resolved (i.e., favorable to whom).

---

[3] The appeal was reinstated on May 12, 2022.

On May 9, 2022, the trial court signed findings of fact and conclusions of law, which stated in relevant part:

[Findings of Fact]

3.  Socorro's counsel indicated in closing arguments at trial that she was seeking a declaration that she was the legal owner of the subject property. With respect to conversion and quantum meruit, Socorro's counsel stated in closing argument at trial that she was abandoning those claims. Socorro's counsel further stated she was waiving any claims to a return of deposits. Thus, Socorro's claims at trial included claims for breach of contract, trespass to try title, and declaratory judgment.

4.  At trial and afterwards, Antonio made it clear that he was seeking to enforce the contract and force the sale of the property, and Socorro did not object to trying that issue. Antonio's counsel argued for enforcement of the 2011 Agreement on numerous occasions, including in opening statements, closing arguments, and post-trial and post-judgment briefing. Additionally, Antonio testified without objection at trial that he would like to recover "what is stated in the agreement."

5.  Socorro never objected to any of Antonio's or his counsel's requests to enforce the 2011 Agreement as being outside the pleadings and never obtained a ruling on any such objection.

[Conclusions of Law]

1.  This Court's judgment was intended to be final and to resolve all parties and all claims. . . .

2.  Antonio Gonzalez's claim for breach of contract and specific enforcement thereof was tried by consent, and that claim supports the judgment rendered by this Court.

3.  Additionally, this Court's judgment was supported by Socorro's own pleadings for trespass to try title and for declaratory judgment.

## II.    SUFFICIENCY OF THE EVIDENCE

Socorro first challenges the trial court's judgment in favor of Antonio on his unpleaded breach of contract counterclaim and pleaded conversion and quantum meruit counterclaims, arguing: (1) there was no trial by consent of his unpleaded breach of contract counterclaim; assuming arguendo that Antonio's unpleaded breach of contract counterclaim was tried by consent, the 2011 Agreement was an unenforceable contract because she was not a willing participant, and "[t]he great weight and preponderance of the evidence shows that Antonio materially breached the 2011 Agreement"; and (2) Antonio did not provide sufficient evidence to meet the elements of his pleaded conversion and quantum meruit counterclaims.

### A.    Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *W & T Offshore, Inc. v. Fredieu*, 610 S.W.3d 884, 898 (Tex. 2020) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). When reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict, crediting favorable evidence when reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 783 (Tex. 2020). Conflicts in the evidence ordinarily present an issue for the factfinder to resolve, and we defer to the factfinder's resolution of such evidence. *See McAllen Hosps. L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019). Meanwhile, a factual sufficiency challenge requires that the attacking party "demonstrate on appeal that the adverse finding is against the

8

great weight and preponderance of the evidence." *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 733 (Tex. 2020) (per curiam) (quoting *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)).

**B.**  **Antonio's Unpleaded Breach of Contract Counterclaim**

**1.**  **Breach of Contract Elements**

In a breach of contract claim, the claimant must put forth evidence that (1) a valid contract existed; (2) the claimant performed or tendered performance as contractually required; (3) the opposing party breached the contract by failing to perform or tender performance as contractually required; and (4) the claimant sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "A party seeking the equitable remedy of specific performance in lieu of money damages may, in some circumstances, be excused from pleading and proving the second element, but must additionally plead and prove that, at all relevant times, it was ready, willing, and able to perform under the contract." *Id.* "Contested fact issues, including prerequisites to obtaining equitable relief, are for the [factfinder] to resolve." *Id.* "[T]he burden of proof is on the party seeking a remedy." *Id.*

**2.**  **Trial by Consent**

By her first sub-issue, Socorro asserts the trial court improperly granted judgment in favor of Antonio on an unpleaded cause of action, namely breach of contract, for which there was no trial by consent.

It is undisputed here that Antonio did not plead a breach of contract counterclaim, and a party "may not be granted a favorable judgment on an unpled cause of action,

9

absent trial by consent." *Happy Endings Dog Rescue v. Gregory*, 501 S.W.3d 287, 291 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied) (quoting *Maswoswe v. Nelson*, 327 S.W.3d 889, 894 (Tex. App.—Beaumont 2010, no pet.)); *see* TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Whether an issue is tried by implied consent requires an examination of the record as a whole for evidence "indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Med. Imaging Sols. Grp., Inc. of Tex. v. Westlake Surgical, LP*, 554 S.W.3d 152, 160 (Tex. App.—San Antonio 2018, no pet.); *see also Moreno v. Ocadiz*, No. 13-19-00116-CV, 2021 WL 3085855, at *5 (Tex. App.— Corpus Christi–Edinburg July 22, 2021, pet. denied) (mem. op.) ("Trial by consent is intended to cover the exceptional case where it clearly appears from the record that the parties tried the unpleaded issue."). "When evidence relevant to both a pleaded and an unpleaded issue has been admitted without objection, the doctrine of trial by consent should not be applied unless clearly warranted." *Moran v. Williamson*, 498 S.W.3d 85, 97 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also UMLIC VP LLC v. T & M Sales & Env't Sys., Inc.*, 176 S.W.3d 595, 605 (Tex. App.—Corpus Christi–Edinburg 2005, pet. denied) (concluding an issue was not tried by consent where evidence of the issue was admitted without objection but the opposing party objected to the submission of a jury question on the issue). Trial by consent is not intended to establish a general rule of practice and should be applied cautiously. *Happy Endings*, 501 S.W.3d at 291. For

reasons explored below, we conclude that Antonio's unpleaded breach of contract counterclaim was tried by consent. *See id.*; *see also* Tex. R. Civ. P. 67.

At the outset, we observe that ambiguity plagued the trial proceedings. Socorro's live petition included claims for breach of contract, trespass to try title, trespass to real property, declaratory judgment, conversion of property and rent, gross negligence, and quantum meruit. However, Socorro asserted in her opening statements[4] that (1) only her conversion of property and rent claim was before the trial court; (2) the statute of limitations barred either party from pursuing a breach of contract claim; and (3) the trial court's *interim* order, which removed Antonio from the property, resolved her claims of trespass to try title and trespass to real property.[5] Antonio, conversely, disputed Socorro's contention that only her conversion claim was at issue, arguing that the burden was on Socorro to prove all her pleaded claims. Antonio's opening statements made no mention of his pleaded counterclaims for conversion or quantum meruit *or* unpleaded

---

[4] Socorro stated in relevant part:

And, Your Honor, and we say today what is left, according to the—to the pleadings is that he converted all this [sic] rentals, he caused damages, he caused her—and the breach of contract, Judge, this was in 2011. All—all of the attorneys know four years after that, it's gone, a contract, in order to—to pursue a breach of contract on either side.

. . . . I had trespass to real property, and trespass to try title. However, those two issues are already done in the interim order. We had a hearing. I believe . . . the attorney at that time, and the Court signed an order to remove [Antonio] from the apartments. And [Socorro] has been in the apartments since November 1st, 2016. Yes. For two and a half years. And then I have conversion. And that's where I am going under the conversion of the property, and the conversion of rents. I also had quantum meruit. So, Judge, in a nutshell that—that [i]s what is before you.

[5] The November 2016 enforcement order was predicated on a previously issued order titled, "Interim Order," which "restrained [Antonio] from entering or having possession of" the subject property and contained the following language: "This Interim Order for the Parties shall be in effect until further Order of the Court." A "judicial release" dissolving the mechanic's lien against the property also accompanied the November 2016 enforcement order.

11

counterclaim for breach of contract. However, Antonio maintained that he had fulfilled all the stipulations of the 2011 Agreement and that the remedy he sought at trial was for the "execution of this agreement."

Notwithstanding Socorro's opening statements regarding the statutory preclusion of her own breach of contract claim, Socorro admitted into evidence the recorded 2008 deed as well as the parties' 2011 Agreement, and her testimony concerned Antonio's purported noncompliance with several provisions of the agreement. Meanwhile, during Antonio's case-in-chief, Socorro cross-examined Antonio on the timeliness of his own breach of contract counterclaim, to which Antonio objected:

| [Socorro's counsel:] | [Antonio], can you please look at [Socorro's] Exhibit No. 2, the real estate agreement, for the record. |
|---|---|
| [Antonio:] | Yes. |
| [Socorro's counsel:] | Okay. During this time when you signed–you and your sister signed this agreement on May 27th, 2011, did you file a lawsuit under a breach of contract or file a lawsuit to get the property on or before May 2015, May 27, 2015, four years after?[6] Yes or no? |
| [Antonio:] | I only filed the document that was signed. |
| [Socorro's counsel:] | Did you file a lawsuit to bring her to Court to give you title to the property, your sister [sic]? |
| [Antonio:] | No. |

---

[6] Breach of contract claims are governed by a four-year statute of limitations. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 707 (Tex. 2021). "The limitations period on a cause of action begins to run 'when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Id.* at 707–08 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

| | |
|---|---|
| [Socorro's counsel:] | Okay. And I am talking to enforce this agreement that you say—that's what I am talking about this agreement[.] You said, "no," right? |
| [Antonio:] | Yes. |
| [Socorro's counsel:] | After—prior to May 27, 2015[,] you did not [sic] bring her to Court to enforce this agreement—this contract, correct? |
| [Antonio:] | No. I could not put it under my name because it was still owed to Lone Star. |
| [Socorro's counsel:] | Okay. You—you didn't come to court prior to May 2015, right? |
| [Antonio's counsel:] | I'm going to object. That's an affirmative defense that she didn't plead. |
| [Socorro's counsel:] | I am asking a question, Judge. |
| THE COURT: | Expiration of the statute of limitation. That's jurisdictional, Counsel. |
| [Antonio's counsel:] | Well, that's assuming that there is a breach on the first day of signing. |
| THE COURT: | Well, that's true. And that—that remains to be argued. |
| [Antonio's counsel:] | So we can have the latest breach to start from there. |
| THE COURT: | Well, Counsel, I know what her questions are. I mean, it's not dispositive, but certainly she can ask about the statute of limitations. |
| [Antonio's counsel:] | Yes, sir. |

In her closing arguments, Socorro requested that the trial court conclude that

Antonio "failed to comply" with the agreement and "declare that she was the legal owner,

13

the title owner" under the deed. Socorro further argued that Antonio "never made an effort to come forward and—and file either a breach of contract, file a [declaratory judgment] action," "the statute of limitations are already gone," and Antonio had abandoned his pleaded counterclaims of conversion and quantum meruit.

In a brief submitted to the trial court at its behest prior to its issuance of judgment, Socorro provided a substantive analysis regarding her breach of contract claim. Socorro prayed that the trial court "find that [Antonio] breached the contract dated May 2011 and [Antonio] take nothing since he has been unjustly enriched as set out [herein]." Wholly absent from her brief was an analysis of any of her other claims. Socorro additionally addressed Antonio's conversion and quantum meruit counterclaims and requested that they be denied.

In Antonio's brief, he stated that he had complied with all relevant terms of the 2011 Agreement; the 2011 Agreement established his equitable interests in the subject property; in entering the 2011 Agreement, Socorro waived her right to acquire fee simple title; Socorro's breach of contract claim is barred by the statute of limitations or laches; and he sought the "enforce[ment] [of] the terms of the [2011 Agreement]." Apart from his request for specific performance under the contract, Antonio's brief provided no discussion of the vehicle ancillary to such request—i.e., his pleaded counterclaims or unpleaded breach of contract counterclaim against Socorro or evidence in support of such claims.

Amidst the perplexing issue presentation wherein Socorro appeared to waiver regarding the preclusion of her own breach of contract claim, we nonetheless conclude

that the record contains evidence of a mutual understanding between the parties that Antonio's unpleaded breach of contract counterclaim was tried by consent. *See Moran*, 498 S.W.3d at 99. Socorro repeatedly acknowledged Antonio's unpleaded breach of contract counterclaim at trial, and rather than object to its presentation, she raised an unpleaded affirmative defense of the statute of limitations. *See id.*; *cf. Stage Stores, Inc. v. Eufracio*, No. 13-18-00281-CV, 2019 WL 3484430, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2019, no pet.) (mem. op.) (concluding issue was not tried by consent where party "filed a supplemental brief with the trial court . . . objecting to consideration of the unpleaded issue"). Therefore, the trial court did not err in concluding that Antonio's unpleaded breach of contract counterclaim was tried by consent. *See* TEX. R. CIV. P. 301; *Moran*, 498 S.W.3d at 99–100.

### 3. Socorro's Assertions of No Contract and Antonio's Breach

Socorro argues next that "even if Antonio had actually ple[aded] a breach of contract" counterclaim, (1) the 2011 Agreement "is unenforceable and was unenforceable from its very inception all the way unto the 2019 trial," and (2) "[t]he great weight and preponderance of the evidence conclusively establishes that Antonio materially breached the 2011 Agreement." *See Pathfinder Oil*, 574 S.W.3d at 890.

Socorro's first point is contrary to her pleadings, position at trial, briefing to the trial court prior to its issuance of judgment, and arguments in her motion for new trial, wherein she asserted: "[Socorro] will show the [trial c]ourt that she and [Antonio] are brother and sister and on May 27, 2011, [Socorro] and [Antonio] signed a REAL ESTATE AGREEMENT wherein [Antonio] would pay [Socorro] the sum of $40,000.00 for the

15

subject property"; "[Socorro] will show the [trial c]ourt that a *valid contract* existed . . . . [Antonio] breached the Contract dated May 27, 2011"; and "[Socorro] and her brother, [Antonio,] entered into a *valid contract* together entitled [']Real Estate Agreement['] dated May 27, 2011." (Emphasis added.). We cannot consider that which was not first presented to the trial court. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) (providing that "[p]arties are restricted on appeal to the theory on which the case was tried" in the trial court); *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 121 (Tex. App.—El Paso 2018, no pet.) ("It is improper to enlarge a ground of error or expand an issue on appeal to encompass matters that were not before the trial court."); *see also Garrigues v. Hardie*, No. 13-18-00418-CV, 2020 WL 4812636, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, no pet.) (mem. op.) ("[A] party cannot take a position on appeal that is inconsistent with the position that it took in the trial court."). Thus, Socorro is precluded from arguing there was no valid contract on appeal. *See Pike*, 610 S.W.3d at 783; *Lion Copolymer*, 614 S.W.3d at 733; *Pathfinder Oil*, 574 S.W.3d at 890.

To Socorro's second point, she asserts: assuming arguendo that a valid contract existed between the parties, she presented evidence that Antonio had materially breached the contract; thus, he cannot prove performance under the contract—a necessary element of his breach of contract counterclaim. *See Pathfinder Oil*, 574 S.W.3d at 890.

Imbued in our sufficiency of the evidence analysis is contract interpretation. "[O]ur task is to determine and enforce the parties' intent as expressed within the four corners

16

of the written agreement," and "resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743–44 (Tex. 2020). If the agreement can be given a certain and definite legal meaning, it is not ambiguous, and we construe the agreement as a matter of law. *Id.* at 744. Here, neither party contends the 2011 Agreement is ambiguous, and we agree.

Socorro specifically complains that Antonio breached the 2011 Agreement in failing to comply with the following stipulations: (1) "pay Socorro the $40,000 required by" stipulations one and five; (2) "list the Subject Property for sale as required by" stipulation three; (3) "obtain[] financing as required by" stipulation five; (4) "pay off the Rio Tax note on the Subject Property" or "give the monthly payments on the Lone Star National Bank note" as "required by" stipulations two and seven; and (5) "give Socorro the monthly $600 payments" in compliance with stipulation six.

Socorro testified that with respect to the first stipulation, the mortgage note was in arrears by four months when she "took over on November 1, 2016." On cross-examination, Socorro conversely testified that Antonio had made payments towards the note "[f]rom 2008 until the day that the [trial court] returned [her] property and [she] took possession . . . in November." Antonio further testified he had made payments until the issuance of the removal enforcement order, which contained language prohibiting him from managing finances related to the property. Regarding the $40,000.00 owed to Socorro under stipulations one and five, the parties presented conflicting testimony, and Antonio claimed he had paid Socorro in full. The parties also presented conflicting

17

testimony of whether Antonio had made the $600.00 monthly payments pursuant to the sixth stipulation. Our "standard requires us to defer to the trial court's judgment of the credibility of the witnesses in a bench trial." *See In re J.F.-G.*, 627 S.W.3d 304, 317 (Tex. 2021); *Lopez*, 576 S.W.3d at 392. The trial court was free to believe Antonio, disbelieve Socorro, and resolve any inconsistencies in either parties' testimony in its resolve of stipulations one, two, six, and seven. *See Wood v. Wiggins*, No. 01-18-00630-CV, ___ S.W.3d __, __, 2021 WL 5312652, at *4 (Tex. App.—Houston [1st Dist.] Nov. 16, 2021, no pet.).

To the challenged third and fifth stipulation, we disagree with Socorro's assertion that Antonio's fulfillment of these stipulations were "preconditions for Antonio to become an equitable owner." *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) ("A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992))). Although on appeal Socorro ascribes the responsibility for selling the subject property to Antonio (i.e., the third stipulation), both parties appeared to acquiesce at trial that the 2011 Agreement did not specify, and we agree.[7] *See Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 690 (Tex. 2022) ("We cannot employ surrounding facts and circumstances to make contract language say something it unambiguously does not or to determine 'that the parties probably meant, or could have meant, something other than what their agreement

_____

[7] The relevant language reads as follows: "Parties agree that the property shall be listed with a broker for sale for an amount of at least $290,000.00 plus commission to broker(s)[.]"

18

stated.'" (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 769 (Tex. 2018))).

Concerning fulfillment of stipulation five, which required that Antonio obtain financing but prescribed no deadline, evidence was limited to his testimony that he had "tried." *See id.*; *see also Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016) (observing that courts will often imply "a reasonable time during which the contract will remain effective" where a contract is silent). However, as Antonio notes in his appellate brief, the 2011 Agreement "contemplated the sale and division of the proceeds *even if* Antonio did not obtain financing." Thus, such condition unmet would not have been detrimental to the enforceability of the 2011 Agreement. *See generally Solar Applications*, 327 S.W.3d at 108. Socorro challenges no other elements of Antonio's unpleaded breach of contract counterclaim. *See Pathfinder Oil*, 574 S.W.3d at 890.

After examining the entire record, considering both the evidence in favor of and contrary to the trial court's judgment on Antonio's unpleaded breach of contract counterclaim and related findings, we conclude the trial court's findings are supported by both factually and legally sufficient evidence. *See Pike*, 610 S.W.3d at 783; *Lion Copolymer*, 614 S.W.3d at 733. We overrule Socorro's first sub-issue in both parts.

D.    **Antonio's Conversion and Quantum Meruit Counterclaims**

By Socorro's second sub-issue, she argues that Antonio presented insufficient evidence to meet the elements of his conversion or quantum meruit counterclaims. As Antonio observes in his appellee's brief, the trial court's judgment declared Antonio take nothing on his conversion claim and did not award damages on his quantum meruit claim. Thus, with respect to these counterclaims, Socorro has already received relief requested,

19

*see* TEX. R. APP. P. 38.1(j), and there is no error for this Court to review. *See generally id.*

R. 44.1 (reversible error). We overrule Socorro's second sub-issue.

### III.     EVIDENTIARY OBJECTIONS

Socorro avers by her second issue that the trial court erred in admitting the only exhibit offered by Antonio into evidence, a document entitled, "Assignment of Rent, Income, and Receipts," which was purportedly signed by Socorro. The document was notarized, recorded on May 30, 2008, with the Hidalgo County Clerk's Office, and contained a county seal. Socorro's objection was as follows:

> Your Honor, object that this—this witness did not identify the document as required by the Rules. [Antonio's counsel] did not lay the proper foundation. He could have done it through his client. Because [Socorro] did not identify that document, and says that it's not her signature.

On appeal, Socorro identifies her complaint as one challenging the document's admissibility, arguing that it had not been properly authenticated and contained hearsay. *See* TEX. R. EVID. 805 (hearsay within hearsay), 901 (authentication). Antonio asserts that Socorro's hearsay within hearsay complaint was unpreserved for review, and Socorro's issue has been inadequately briefed.

### A.     Preservation

To preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling. TEX. R. APP. P. 33.1; *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (per curiam). Having reviewed Socorro's objection at trial and Socorro's motion for new trial, it cannot be said that she raised a hearsay within hearsay objection. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 805; *see also Duncan Litig. Invs., LLC v. Watts*, No. 13-18-00265-CV, 2019 WL 2462349, at

20

*7 (Tex. App.—Corpus Christi–Edinburg June 13, 2019, no pet.) (mem. op.) ("The cardinal rule of error preservation is that an objection must be clear enough to give the trial court an opportunity to correct the alleged error."); *see generally H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 623 n.6 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("Authenticity of a document and admissibility of that document under an exception to the hearsay rule are separate inquiries.").

Thus, Socorro failed to preserve her hearsay within hearsay complaint for review, and this sub-issue is overruled. *See* TEX. R. APP. 33.1; *see also Willamsburg Nat'l Ins. Co. v. State*, Nos. 13-14-00645-CR, 13-14-00647-CR, 2015 WL 7035446, at *4 (Tex. App.—Corpus Christi–Edinburg Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding appellant's hearsay complaint was waived where "[a]t no time did appellant's counsel raise a hearsay objection").

## B.    Inadequate Briefing

With respect to Socorro's authentication complaint, for reasons set forth below, we conclude it was inadequately briefed. *See* TEX. R. EVID. 901, 902.

To assert an issue on appeal, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *Lion Copolymer Holdings*, 614 S.W.3d at 732. Even though reviewing courts are to interpret briefing requirements reasonably, parties asserting error on appeal must put forth some specific argument and analysis citing the record and authorities in support of their argument. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018); *Certain Underwriters at Lloyd's of London Subscribing to*

21

*Policy No. NAJL05000016-H87 v. Mayse & Assocs., Inc.*, 635 S.W.3d 276, 286 (Tex. App.—Corpus Christi–Edinburg 2021, pet. denied). Inadequately briefed issues may result in waiver. *See Newsome*, 569 S.W.3d at 126.

Socorro's appellate brief contains no citation to or application and analysis of the relevant rules or authority. *See* TEX. R. APP. P. 38.1(i); TEX. R. EVID. 901(a) (providing that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is" and establishing a non-exhaustive list of means to authenticate an item of evidence); R. 902(4) (providing an exclusive list of items that courts must always accept as authentic, such as if "a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct"); *see also Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam) (observing the differences between rule 901 and 902). Therefore, we conclude that Socorro's second sub-issue was inadequately briefed and consequently waived. *See* TEX. R. APP. P. 38.1(i); *Med. Specialist Grp., P.A. v. Radiology Assocs., L.L.P.*, 171 S.W.3d 727, 732 (Tex. App.—Corpus Christi–Edinburg 2005, pet. denied) ("Failure to cite authority or provide substantive analysis waives an issue on appeal"); *see also Concho River Basin Water Conservancy Ass'n v. Tex. Comm'n on Env't Quality*, No. 07-12-00302-CV, 2013 WL 6254910, at *5 (Tex. App.—Amarillo Dec. 3, 2013, pet. denied) (mem. op.) (concluding "lack of authentication" complaint was waived where appellant presented only a conclusory argument on appeal); *Deaner v. Marchese*, No. 2-03-029-CV, 2004 WL 177480, at *1 (Tex. App.—Fort Worth Jan. 29, 2004, no pet.) (mem. op.) (concluding "lack

of authentication" complaint was waived where appellant "cites no authority to support her position" on appeal).

We overrule Socorro's second issue.

## IV.    MOTION FOR NEW TRIAL

By her third issue, Socorro asserts the trial court abused its discretion in denying her motion for new trial. Antonio argues this issue has also been inadequately briefed, and we agree. *See* TEX. R. APP. P. 38.1(i); *Newsome*, 569 S.W.3d at 126.

Socorro's appellate brief presents no analysis or appropriate citations to authorities or the record; she instead instructs this Court to read her motion and cites to appendices to her brief:

> The trial court abused its discretion in denying Socorro's Motion For New Trial because Socorro's motion aptly analyzed and described in detail the reasons why the court's Final Judgment was error and an abuse of discretion. Apx6; Apx1. Socorro's Motion For New Trial explains why the evidence is legally and factually insufficient to support the court's Final Judgment. Id.

> For the reasons stated in the motion, as well as the reasons stated in Section A, above, it was an abuse of discretion for the trial court to deny Socorro's Motion For New Trial. See Section A, supra. The trial court's Order Denying Socorro Gonzalez's Motion For New Trial must be reversed. See Apx7.

Because Socorro failed to appropriately cite to the record or provide any discussion, argument, authority, or substantive analysis in her brief, we conclude that her third issue was inadequately briefed and therefore waived. *See* TEX. R. APP. P. 38.1(i); *K. Griff Invs., Inc. v. Cronin*, 633 S.W.3d 81, 92 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (concluding issue inadequately briefed where "Appellants do not cite any portion of the record supporting [their] assertions" and instead cite only to an appendix to their brief);

23

*Aflalo v. Harris*, 583 S.W.3d 236, 249 n.7 (Tex. App.—Dallas 2018, pet. denied) (concluding citations to the appendix are not a substitute for citations to the record); *see also Guijarro v. Charles P. Johnson, Inc.*, No. 13-19-00268-CV, 2021 WL 1133614, at *10 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2021, pet. denied) (mem. op.) (concluding an appellant waived error related to trial court's denial of motion for new trial where appellant "points to one page and one appendix in the record and cites no case or statutory authority" in appellant's brief); *Roberts v. Fargason*, No. 13-17-00395-CV, 2019 WL 1716803, at *3 n.7 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2019, no pet.) (mem. op.) (concluding issue inadequately briefed where appellant made a general assertion but did not provide any discussion, authority, or substantive analysis).

Socorro's third issue is overruled.

## V.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
16th day of June, 2022.

24